Shearn MOODY, Jr.,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 85–2259.

United States Court of Appeals,
Fifth Circuit.

March 3, 1986.

Gary M. Riebschlager, Ben B. Floyd, Jacalyn D. Scott, Michol O'Connor, Vidal G. Martinez, Houston, Tex., for Shearn Moody, Jr.

Frank A. Conforti, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., C.J. (Neil) Calnan, Asst. U.S. Atty., Houston, Tex., for U.S.

Before CLARK, Chief Judge, and POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Shearn Moody, Jr. appeals a judgment of the district court awarding him damages for the theft of a coin from the United States mail.[1] The coin was valued at $50,000. Moody's recovery from the United States Postal Service was limited to $25,000. Moody also appeals the denial of attorneys' fees and costs. We affirm in part and vacate and remand in part.

## BACKGROUND FACTS

On December 1, 1981, Norman Revie, an officer of W.L. Moody Bankers of Galveston, Texas, an unincorporated sole proprietorship owned by Shearn Moody, Jr., gave an envelope containing a gold coin to his secretary, Barbara Judd. Ms. Judd was instructed to mail the coin to the Dallas, Texas office of Goliad Corporation. Michael Brownlee, owner of Goliad, a numismatic firm, had located a purchaser for the coin, an 1879 Flowing Hair "Stella" $4.00 gold piece, for $50,000. The parties agreed that Brownlee was to remit $45,000 to Moody and keep $5,000 as a broker's fee.

Revie instructed Judd to register the envelope containing the coin and to insure it for $50,000. Revie took no steps whatever to determine whether postal insurance in that amount was available. Judd delivered the envelope to José Aguirre, a window clerk at the main post office in Galveston. Judd told Aguirre that she wished to send the envelope by registered mail and she wished to insure it for $50,000.

Aguirre consulted the United States Postal Service fee schedule, attached as Appendix A to this opinion, and charged Judd $.20 for postage, $.60 for the return receipt, and $17.35 to cover the cost of handling and insurance. This latter fee was composed of a charge of $11.10 for handling and insurance up to $25,000, plus an additional charge of $6.25 for the han-

dling charge on the second $25,000 of stated value.

Under postal regulations, a registered letter may be insured up to $25,000. *See* Domestic Mail Manual, section 911.31, *incorporated into* 39 C.F.R. § 111.1. Aguirre was apparently not aware of the $25,000 limitation and said nothing to Judd to indicate that she had not purchased $50,000 of insurance. Aguirre testified at trial that because he was unaware of the limitation he believed that he had in fact sold Judd $50,000 of insurance protection. There were no signs in the post office informing customers of the insurance limitation. There was no notice on the fee schedule of this limitation.

A review of the fee schedule demonstrates, however, that the handling fee is consistently $.25 per thousand dollars of value until the value of the article exceeds $1,000,000. It is further apparent that insurance coverage is available at a cost of $.05 per thousand up to a total value of $25,000 at which point the insurance surcharge terminates. It would appear manifest to anyone reviewing the schedule that insurance was available only to the amount for which an insurance fee was charged, *i.e.,* $25,000.

The record reflects that Judd's discussion with Aguirre was very limited. It included this exchange:

Q. Did you check to see if [the coin] was insured for [$50,000]?

A. No, sir.

\*  \*  \*  \*  \*  \*

Q. Did [Aguirre] specifically tell you, yes, he could insure it for $50,000?

A. No.

Upon completion of the transaction, Judd was given a registry slip which bears the printed notation: "There is a maximum indemnity payable on any claim without commercial insurance.... Consult postmaster for details of any insurance limitations." Judd neither read the notice upon receipt of the slip nor consulted the postmaster or

---

**1.** Subsequent to the filing of this suit, Moody has sought the protection of the Bankruptcy

Code and this appeal is being pursued by his estate's trustee.

Aguirre or any other clerk. Judd took the registry slip and the receipt and returned to her office.

The envelope was delivered to Goliad on December 4. According to Goliad, the envelope did not contain the coin. Moody filed suit against the United States Postal Service and Goliad.

The district court found that the coin had been removed from the envelope while in the possession of the United States Postal Service. Based on this finding, the court exonerated Goliad from liability and cast the United States Postal Service in judgment for $25,000, the amount of the insurance. The court rejected Moody's contention that the United States Postal Service was equitably estopped from asserting the insurance limitation of $25,000. The court denied Moody attorneys' fees and costs. Only Moody appeals.

## ANALYSIS

### Equitable Estoppel

Under the regulations, Moody could not and did not purchase $50,000 of insurance. The only way in which Moody can contend for the additional $25,000 is by asserting that the United States Postal Service is equitably estopped from claiming the $25,000 limit. Traditionally, equitable estoppel did not lie against the government. See generally, Comment, Equitable Estoppel of the Government, 79 Colum.L. Rev. 551 (1979). In more recent times, the courts have applied the doctrine to the federal government in certain narrow circumstances. See Azar v. United States Postal Service, 777 F.2d 1265 (7th Cir.1985); Portmann v. United States, 674 F.2d 1155 (7th Cir.1982); TRW, Inc. v. F.T.C., 647 F.2d 942 (9th Cir.1981). One who seeks to invoke equitable estoppel against the United States must, at a minimum, establish the four traditional private law elements of the

doctrine: (1) that the party to be estopped was aware of the facts; (2) that the party to be estopped intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts; and (4) that the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury. See, e.g., Portmann; III Pomeroy, Equity Jurisdiction, § 805 (5th ed. 1941). Viewing these four traditional elements we find that the doctrine of estoppel is not appropriate to the present facts. There is no evidence that Moody reasonably relied to his detriment on the conduct of the representative of the United States Postal Service.[2]

The evidence reflects that neither Revie nor Judd checked to see whether insurance of $50,000 was available from the United States Postal Service. We are persuaded that it was unreasonable to mail a coin valued at $50,000 without taking adequate steps to determine that insurance in that amount was available and was indeed provided. Under the circumstances of this case, Aguirre's failure to tell Judd that he could not sell her $50,000 of insurance did not constitute a foundation upon which to base the application of equitable estoppel.

Judd was required to divulge the full value of the coin so that the postal handling fee could be set. As reflected by the schedule, the charge for the registry and handling of each article is dependent on the value of the article. One must state the value. But by doing so, one does not automatically receive insurance for that amount. For example, the fee schedule goes to $5,000,000. One declaring that value and saying "I wish insurance" would be charged a handling fee for the full value and an insurance surcharge for the first $25,000. One could not then reasonably contend, because he had stated a value of $5,000,000 and asked for insurance, and was not affirmatively told that insurance

**2.** Because of our finding that Moody's reliance was not reasonably based, we do not decide whether "affirmative misconduct" by an employee of the government is required to estop the government. See Portmann; cf. Heckler v. Community Health Services of Crawford County,

Inc., 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Nor do we decide whether the sovereign function/proprietary function distinction should be adopted. See Azar; FDIC v. Harrison, 735 F.2d 408 (11th Cir.1984).

was limited to $25,000, that he had received insurance for $5,000,000. To accept Moody's contention that equitable estoppel applies to his $25,000 claim beyond the insurance coverage, would require acceptance of the argument that the person in the prior hypothetical would have had $5,000,000 worth of coverage simply by making known his desire for insurance and declaring the value of the article.

We conclude that the failure of Moody's agents to ascertain, in a specific and affirmative manner, whether there was a limitation on the amount of insurance which could be purchased distinguishes this case from *Azar* and *Portmann*, in each of which the plaintiffs made an effort to determine whether they had purchased sufficient insurance.

The district court's refusal to apply equitable estoppel, albeit on different grounds, was a correct judgment which we affirm for the foregoing reasons.

*Attorneys' Fees and Costs*

■ The district court denied recovery of attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2414, for the sole reason that Moody brought the suit as an individual and that his net worth exceeded $1,000,000. 28 U.S.C. § 2412(d)(2)(B)(i). On appeal Moody contends that although he was the named plaintiff, the suit was brought by him as the owner of W.L. Moody Bankers, an unincorporated business worth less than $5,000,000, 28 U.S.C. § 2412(d)(2)(B)(ii), and that the district court's determination to the contrary is clearly erroneous.

The record contains sufficient evidence to support the district court's determination that Shearn Moody, Jr. brought the suit as an individual. That finding is not clearly erroneous. Fed.R.Civ.P. 52(a). *Anderson v. City of Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ We must, however, vacate the denial of attorneys' fees. While this case was pending on appeal, 28 U.S.C. § 2412(d)(2)(B)(i) was amended to permit recovery of attorneys' fees by individuals whose net worth is less than $2,000,000. P.L. 99–80, § 2(c)(1)(A), 99 Stat. 183. Under § 7(a) of the amendments to the EAJA the new terms are applicable to cases pending on the date of their enactment. Inasmuch as we are unable to determine from the record Shearn Moody's worth when he brought this action, except that it was more than $1,000,000, we must remand for further findings on this issue.

■ We also vacate the district court's denial of costs. The United States Postal Service denied any liability and contended that, if liable, its liability should be limited to $25,000. A perusal of this record reflects that the bulk of trial time was spent on the question of liability. Moody prevailed in this claim against the government, over its strenuous defense that it was not liable. Under those circumstances, we believe that it was an abuse of discretion to deny Moody recovery of the costs incurred in litigating against the United States Postal Service. 28 U.S.C. § 2412(a). We cannot determine what portion of the costs was incurred in the litigation of the claim against the United States Postal Service and what portion was attributable to the litigation against Goliad. On remand the district court should award Moody those costs incurred in litigating his claim against the United States Postal Service.

Should the court find that Moody qualifies for attorneys' fees under the EAJA, as amended, then entry of an appropriate award of those fees will also be in order.

For the foregoing reasons, the judgment is AFFIRMED in part, VACATED in part, and the case is remanded for further proceedings consistent herewith.

# APPENDIX A

| Value | Fees (in addition to postage) | |
| --- | --- | --- |
| | For articles with Postal Insurance | For articles without Postal Insurance |
| | Column A | Column B |
| $0.00 to $100 | $ 3.30 | $3.25 |
| $100.01 to $500 | 3.60 | 3.55 |
| $500.01 to $1,000 | 3.90 | 3.85 |
| $1,000.01 to $2,000 | 4.20 | 4.10 |
| $2,000.01 to $3,000 | 4.50 | 4.35 |
| $3,000.01 to $4,000 | 4.80 | 4.60 |
| $4,000.01 to $5,000 | 5.10 | 4.85 |
| $5,000.01 to $6,000 | 5.40 | 5.10 |
| $6,000.01 to $7,000 | 5.70 | 5.35 |
| $7,000.01 to $8,000 | 6.00 | 5.60 |
| $8,000.01 to $9,000 | 6.30 | 5.85 |
| $9,000.01 to $10,000 | 6.60 | 6.10 |
| $10,000.01 to $11,000 | 6.90 | 6.35 |
| $11,000.01 to $12,000 | 7.20 | 6.60 |
| $12,000.01 to $13,000 | 7.50 | 6.85 |
| $13,000.01 to $14,000 | 7.80 | 7.10 |
| $14,000.01 to $15,000 | 8.10 | 7.35 |
| $15,000.01 to $16,000 | 8.40 | 7.60 |
| $16,000.01 to $17,000 | 8.70 | 7.85 |
| $17,000.01 to $18,000 | 9.00 | 8.10 |
| $18,000.01 to $19,000 | 9.30 | 8.35 |
| $19,000.01 to $20,000 | 9.60 | 8.60 |
| $20,000.01 to $21,000 | 9.90 | 8.85 |
| $21,000.01 to $22,000 | 10.20 | 9.10 |
| $22,000.01 to $23,000 | 10.50 | 9.35 |
| $23,000.01 to $24,000 | 10.80 | 9.60 |
| $24,000.01 to $25,000 | 11.10 | 9.85 |
| $25,000 to $1,000,000 | $11.10 plus handling charge of 25 cents per $1,000 or fraction over first $25,000. | $9.85 plus handling charge of 25 cents per $1,000 or fraction over first $25,000. |
| $1,000,000 to $15,000,000 | $254.85 plus handling charge of 20 cents per $1,000 or fraction over first $1,000,000. | $253.60 plus handling charge of 20 cents per $1,000 or fraction over first $1,000,000. |
| Over $15,000,000 | Additional charges may be made based on considerations of weight, space and value. | |

### ADDITIONAL SERVICES

|  | Extra fee |
| --- | --- |
| COD COLLECTION CHARGE (Maximum amount collectible is $400) | $1.20 |
| RESTRICTED DELIVERY | $1.00 |
| RETURN RECEIPTS: | |
| Requested at time of mailing: | |
|   Showing to whom and date delivered | $0.60 |
|   Showing to whom, when and address where delivered | $0.70 |
| Requested after mailing: | |
|   Showing to whom and date delivered | $3.75 |

Exhibit 911.21.—Registry Fees

Issue 6, 7–7–81