Jewellean S. MANGAROO,
Plaintiff–Appellant,

v.

Ivory V. NELSON, et al.,
Defendants–Appellees.

No. 88–2343
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1989.
Opinion on Denial of Rehearing
Feb. 21, 1989.

David T. Lopez, Houston, Tex., for plaintiff-appellant.

Lou Bright, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Jerry D. Cain, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before POLITZ, KING, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiff Jewellean Mangaroo, formerly Dean of the School of Nursing at Prairie View A & M University (the "university"), sued the acting president of the university, Ivory Nelson, in his official and individual capacities, and the Board of Regents of the Texas A & M University System (the "board")[1] for monetary and injunctive relief, alleging that the defendants had demoted her from dean to a tenured faculty position in violation of her constitutional right to due process. After trial, the district court granted the defendants' motion for a directed verdict and entered judgment accordingly. Because we agree that Mangaroo is not entitled to monetary damages, we affirm the judgment in part; because we also conclude, however, that she is nonetheless entitled to injunctive relief, we reverse the judgment in part and remand to the district court for consideration of the appropriate equitable relief.

## I.

Originally hired in 1969, Mangaroo had been Dean of the university's School of Nursing for approximately thirteen years when Nelson was appointed acting president in June 1982. Shortly after he was appointed, Nelson notified Mangaroo and two other deans that they would be reassigned to tenured faculty positions at the beginning of the new academic year starting September 1, 1982. None of the deans was provided with either notice or an opportunity for a hearing before or after the demotion.

Mangaroo filed the instant suit, alleging that, by virtue of university practices, policies, and regulations, and oral representations from university officials, she had a constitutionally-protected property interest in her position as dean, and that Nelson and the board had deprived her of that property interest without due process. The two other deans demoted by Nelson filed similar lawsuits in the same district.

On April 29, 1983, the court held a pretrial conference in Mangaroo's case, at which counsel for both parties noted that a motion for summary judgment was pending in one of the two cases filed by the other deans, *Rollins v. Nelson*, No. H-82-2351 (S.D.Tex.), then before District Judge John V. Singleton. Both counsel agreed that the issues presented in the three cases were identical and that Judge Singleton's disposition of the motion for summary judgment therefore would effectively dispose of all three cases. According to the court's docket entry, the agreement at the conference was that

> if [plaintiff] prevails [in *Rollins*] the other two will be settled. If [plaintiff] loses [in *Rollins*] theses [sic] two cases will be dismissed. [Plaintiff] willfile [sic] agreed Motion to Stay pending outcome in [Judge Singleton's] case.

Pursuant to this agreement, the district court granted Mangaroo's unopposed motion to stay the proceedings until the resolution of the summary judgment motion in *Rollins*.

In January 1984, Judge Singleton ruled in favor of the plaintiff in *Rollins*, holding that university regulations and practices, as well as oral and written representations made to Rollins by university officials, gave her a constitutionally-protected property interest in her employment as a dean. Shortly thereafter, Mangaroo's counsel notified the court of Judge Singleton's deci-

---

1. Prairie View A & M University is a part of the Texas A & M University System.

sion; subsequently, counsel notified the court that although Judge Singleton had ordered that Rollins be reinstated to her position as dean, Mangaroo's case would still have to proceed to trial because it involved a claim for monetary damages. Thus, counsel requested, and the court ordered, that the case be reinstated to the active docket.

Mangaroo thereafter moved for partial summary judgment on the issue of whether she had a protectible property interest in her employment as a dean. Over the defendants' opposition, the court granted the motion in March 1985, holding that (1) Nelson and the board were estopped from litigating the issue by virtue of both the collateral estoppel effect of Judge Singleton's order and their counsel's representations and agreement in the pretrial conference, and (2) even if the defendants were not estopped from litigating the issue, Mangaroo was entitled to partial summary judgment on the merits.

The court did not address, however, the defendants' motion for partial summary judgment on the ground that Nelson enjoyed qualified immunity from suit under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and that the board was immune from suit under the eleventh amendment. The defendants renewed their motion, and in November 1986 the court denied summary judgment as to Nelson, but granted it as to the board, holding that since Mangaroo had sued the board as an entity, and not its individual members in their capacities as state officials, the eleventh amendment applied so as to confer immunity on the board as an arm of the state. *See Alabama v. Pugh*, 438 U.S. 781, 783, 98 S.Ct. 3057, 3058, 57 L.Ed. 2d 1114 (1978).

The case proceeded to trial against Nelson in his individual capacity and against Percy Pierre, who, as Nelson's successor in office, replaced him in his official capacity. At the close of the evidence, the court granted a directed verdict for Nelson and

Pierre, concluding that, although Mangaroo had a protectible property interest in her position as dean, the defendants were nonetheless entitled to qualified immunity because Nelson reasonably could have believed that Mangaroo did not have a protectible property interest in her position. Following the denial of her motion for a new trial, Mangaroo appeals the adverse judgment.

## II.

■ For the reason that resolution of the issue in favor of the defendants would dispose of this case, we turn first to the defendants' contention that the judgment should be affirmed because, contrary to the district court's finding, Mangaroo did not have a protectible property interest in her position as dean.[2] Since we conclude that the defendants are estopped from contesting the issue, however, we accept the district court's finding without reaching the merits of the issue.

To invoke equitable estoppel against a private party, a litigant must establish the four traditional common-law elements:

(1) that the party to be estopped was aware of the facts; (2) that the party to be estopped intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts; and (4) that the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury.

*Moody v. United States*, 783 F.2d 1244, 1246 (5th Cir.1986). In recent years, courts have begun to allow estoppel to lie against the government as well as private parties. We have noted, however, that "a party seeking to estop the government bears a quite heavy burden"; in addition to establishing the four elements of estoppel described above, we have also required that the party "allege more than mere negligence, delay, inaction, or failure to follow

**2.** We may affirm the judgment of a district court if there are any grounds in the record to support the judgment, even if those grounds were rejected by the trial court. *See Hoyt R. Matise Co. v. Zurn*, 754 F.2d 560, 565 n. 5 (5th Cir.1985).

an internal agency guideline." *Fano v. O'Neill*, 806 F.2d 1262, 1265 (5th Cir.1987).[3]

In the more usual case, a party claims that the government is estopped from enforcing an otherwise applicable statute, regulation, or other law against it because it relied upon an erroneous statement or conduct by a government official indicating that the law was not applicable. *See, e.g., Fano*, 806 F.2d at 1264; *Moody*, 783 F.2d at 1245–47. In such cases, we are reluctant to estop the government for the simple reason that, were the government barred from enforcing its laws and regulations every time one of its human agents erred, laws that were intended to be generally applicable would become riddled with exceptions.

Here, however, the private litigant is not requesting that the court, in the exercise of its equitable discretion, "exempt" her from a generally-applicable law because of the government's prior conduct; rather, Mangaroo is merely asking that the government, in its position as a litigant in an action for damages, be held to its promises. Thus, one of the central reasons why we are normally reluctant to estop the government is completely absent in this case.[4]

It is therefore with little hesitation that we hold that the defendants are estopped from challenging the district court's conclusion that Mangaroo had a property interest in her position as dean. Undoubtedly, Mangaroo has established the first three elements of estoppel: The defendants were aware of all of the facts surrounding the three cases and the connections between them, and more importantly, of their own intentions regarding what they planned to

do in the event they lost in *Rollins;* the defendants knew that, in reliance upon their stated intentions, Mangaroo would agree to stay her action, and allow it to be dismissed in the event that the defendants won in *Rollins;* and Mangaroo, although equally aware of all of the facts surrounding the three cases, could not know of the defendants' intentions in the absence of their representations.

In sum, the statements to the court in the pretrial conference were not the result of mere negligence. The defendants were familiar with the similarities and potential differences among all of the cases, and they consciously represented to the court that a decision in one would effectively control the disposition of—and more importantly, their litigating posture in—all three.

The only remaining question is whether Mangaroo reasonably relied upon the defendants' representations to her substantial detriment. Had she not agreed to stay her action in reliance upon those representations, she may very well have pursued and obtained, by way of a motion for summary judgment in her own action, immediate relief in the form of reinstatement or otherwise. Now, over four years after the time at which the defendants promised to settle the action, she finds the defendants still challenging the adverse resolution of the predicate issue—supposedly resolved in *Rollins*—upon which her claim to both monetary and injunctive relief depends. In these circumstances, we find her reliance upon the defendants' promises to be both reasonable and substantial.

Because the defendants are estopped from challenging Mangaroo's claim that

---

**3.** Although most of our previous cases involving claims of equitable estoppel against government entities have involved the *federal* government, we cannot perceive any reasons why a different set of rules should obtain for *state* entities. Indeed, Texas courts will allow equitable estoppel to lie against a state governmental entity "where justice requires its application, and there is no interference with the exercise of [ ] governmental functions." *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 836 (Tex.1970). Because the question of whether equitable estoppel will lie in an action based upon federal law is a question to be determined with reference to the federal law of estoppel, we note that we are not bound by

the decisions of the Texas Supreme Court; rather, we refer to them merely to demonstrate that applying equitable estoppel to state, as opposed to federal, entities is not out of line with treatment of the doctrine under state law.

**4.** Moreover, we note that these concerns are inapplicable to Nelson, who was, at the time of the representation, and remains, a defendant sued in his individual capacity. Thus, any hesitation we would otherwise feel in applying equitable estoppel in this case is present only insofar as Mangaroo seeks to apply it to Pierre.

she had a property interest in her position as dean, we accept the district court's finding in her favor on this issue. We reiterate, however, that we express no view on the actual merits or factual accuracy of that finding; our decision is based solely upon our application of the doctrine of equitable estoppel.

### III.

The defendants do not, and indeed reasonably cannot, challenge the district court's finding that, because she was demoted without a prior hearing, Mangaroo was denied due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). But although it found a due process violation, the district court denied Mangaroo relief on the ground that the defendants were entitled to qualified immunity from liability. Because we agree that Nelson is entitled to qualified immunity, we affirm the judgment that he is not liable for money damages; but since qualified immunity does not extend to Pierre, who was sued only in his official capacity, we reverse the judgment insofar as it denies prospective equitable relief.

### A.

■ Government officials sued in their individual capacities for money damages are entitled to qualified immunity from liability insofar as their conduct does not violate a clearly-established constitutional right of which a reasonable person would have been aware. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. In *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court emphasized

that an official's claim to qualified immunity is to be evaluated with reference to specific rules applied in specific fact situations:

> The operation of [the *Harlow*] standard ... depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right.... [O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates the right.

107 S.Ct. at 3038–39.

■ The district court held that, although it was clearly established that a property interest in the form of an entitlement to continue in a particular position could not be deprived without due process, it was not clear at the time of the demotion that Mangaroo actually had a protectible property interest in her position as dean. We agree.[5]

One of the hallmarks of a property interest in a particular position of employment is a legitimate claim to the existence, on the basis of contract, statute, or otherwise, of a requirement that the employee cannot be removed without cause. *See Board of*

---

5. Mangaroo, noting that in *Rollins,* one of the other deans recovered ten dollars in nominal damages against Nelson, argues that we should hold Nelson collaterally estopped from contesting the qualified immunity issue in this case. We reject Mangaroo's argument for two reasons. First, there is no indication that the pretrial agreement covered the issue of qualified immunity as well as the issue of whether Mangaroo had a property interest in her position. The district court's subsequent ruling on Mangaroo's motion for partial summary judgment suggests that the agreement covered only the latter; moreover, Judge Singleton's partial summary judgment in *Rollins,* which formed the basis for the agreement, decides only the property-interest issue.

Second, Mangaroo has failed to produce any record evidence that the qualified immunity issue was either raised in *Rollins* or that it was substantially similar to that presented in this case. For a party to be collaterally estopped from contesting a particular issue, the party seeking estoppel must prove that the issue was actually litigated and that it was identical to that presented in the present litigation. *See Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241, 244 (5th Cir.1983). Although we are aware that all three cases brought by the deans against Nelson are substantially similar, we will not assume that the cases all involved the same issues or that the issues were identical. We thus hold that Nelson is not estopped from claiming qualified immunity in this action.

*Regents v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972); *Evans v. City of Dallas,* 861 F.2d 846, 847–48 (5th Cir.1988). Mangaroo argues that the university's Faculty/Staff Handbook (the "handbook"),[6] university practices and customs, and oral representations to her from university officials all mandate the conclusion that she could be removed from her position as dean only for cause. Thus, she concludes, any reasonable official would have known that she had a constitutionally-protected property interest in her position, and that removing her without notice or hearing would violate her rights.

Without expressing any view on whether she actually had a property interest in her position, we hold, for the purposes of our qualified-immunity analysis, that it was not clearly established, at the time of her demotion, that she had such a property interest. The handbook states that "all" appointments are made only on a year-to-year basis. Although Nelson testified that he was aware that there were exceptions to this blanket statement (insofar as it did not

apply, for example, to tenured faculty members), there is no evidence that it would be unreasonable to conclude, as did Nelson, that it *did* apply to administrative appointments.[7]

Read in context, therefore, the handbook's requirement that adminstrative appointees could be removed only "for cause" could be properly interpreted to mean that administrators could be removed only for cause *during the term of their appointment.* Admittedly, the handbook is ambiguous and admits of differing interpretations—but that fact only reinforces our conclusion that it was not clear that Mangaroo could be removed from her position as dean only for cause.

As for the alleged university practices and customs and the alleged representations made to her by university officials prior to her demotion, Mangaroo has adduced no evidence that Nelson, who had been acting president for only approximately two weeks, was or reasonably should have been aware of these facts.[8] More-

---

6. The handbook reads, in pertinent part:

    All employees of Prairie View A & M University are normally grouped into categories designated as: (1) faculty, (2) academic staff, (3) research and extension staff, (4) administrative staff, (5) classified staff, (6) visiting and adjunct staff, (7) emeritus staff, and (8) retired faculty and staff.

    . . . .

    *Administrative Staff*
    The administrative staff is made up of the President, the vice presidents, the deans, heads of departments, directors of institutes, centers of services, and other professional persons whose duties support these administrators or who are engaged in administrative activities. The administrative staff excludes classified personnel. An administrative staff member also may be a member of the academic staff, but no administrative staff appointment carries with it an automatic academic staff appointment.

    . . . .

    *Terms of Appointment*
    All appointments are on a year to year basis, subject to review and renewal or non-renewal. All faculty are employed for nine months only, unless a specific final period beyond the nine month period is given to the employee in the form of a contract or contract letter. The appearance of an individual's name in the schedule or a verbal agree-

    ment for summer school employment is not a commitment beyond the nine month employment period.

    . . . .

    All administrative appointments are made subject to removal from the administrative position for cause. Administrative appointments will be reviewed regularly for effectiveness of performance. In any event, department head appointments will be reviewed at least every five years.

7. It is on this point that we find Mangaroo's argument most difficult to accept. In essense, Mangaroo argues that administrative appointees, like tenured faculty, were not covered by the year-to-year appointment policy that is all-inclusive on its face. Although the other language in the handbook—particularly the statement that "[a]ll administrative appointments are made subject to removal . . . for cause"—can be read to support Mangaroo's argument, it can also be read to support Nelson's reading of the handbook. In essense, we are reluctant to accept Mangaroo's argument that there was an implicit exception to the year-to-year appointment policy for administrative appointees, in the absence of clear evidence that such an exception was commonly understood to exist. Nelson did not acknowledge such an understanding; nor do we find evidence elsewhere in the record indicating that such an understanding unquestionably existed.

8. Mangaroo argues that Nelson must have been on notice that she had a property interest in her

over, in light of our reluctance to accept *de facto* tenure claims, Mangaroo's argument that her claim to *de facto* tenure rose to the level of a clearly-established right is particularly difficult to accept.[9] Again, we cannot say that Mangaroo's entitlement to her position as dean was clearly established in 1982.

We are mindful that Mangaroo's arguments may, in the final analysis, be meritorious, and that she may indeed have had a legitimate claim of a property interest in her position. That, however is not the question; rather, the issue is whether her entitlement was so clearly established at the time of her demotion in 1982 that no reasonable official could have concluded otherwise. Because of the ambiguities in the handbook and the absence of evidence indicating that Nelson knew or reasonably should have known that university practices and customs, or oral representations, gave Mangaroo a legitimate property interest in her position, we are unable to conclude that a reasonable official would have known that he or she was violating Mangaroo's constitutional rights. We thus agree with the district court's conclusion of law, and affirm the judgment insofar as it denies monetary relief against Nelson in his individual capacity.

position as dean by virtue of this court's decision in *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir.1970). There, we held that a professor at what was then Prairie View A & M College had a protectible property interest in his position because officials at the college "conceded that under prevailing practices, a decision not to offer such an instructor a renewal contract required a showing of cause." *Id.* at 856. Mangaroo argues that *Ferguson* conclusively resolved the issue·of whether university staff had property interests in another position, and, noting that Nelson was then employed at the university, argues that he, like all university employees, must have been aware of the *Ferguson* decision.

We do not know whether Nelson was aware of *Ferguson,* but we do know that *Ferguson* does not control this case. First, the practice referred to in *Ferguson* was not a contested issue; the state officials *conceded* that the "for cause" requirement applied to the case. Thus, contrary to Mangaroo's claim, the court did not *create* a "for cause" requirement, or declare one to be applicable to all university employees now and in the future. Where, as here, university officials contend that the "for cause" requirement does not now exist, *Ferguson* has no relevance;

## B.

■ The district court did not address the issue of injunctive relief; rather it simply concluded that because the "defendants"—meaning both Nelson in his individual capacity and Pierre in his official capacity—were entitled to qualified immunity, Mangaroo was not entitled to any recovery. However, since she established the existence of a due process violation, and since qualified immunity does not extend to state officials sued in their official capacities, we conclude that the district court erred by failing to consider injunctive relief.

Although the eleventh amendment bars a suit against state entities or state officials who seek "to impose a liability which must be paid from public funds in the state treasury,"[10] a party may sue to have a federal court order state officials to conform their future conduct to the requirements of federal law. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Qualified immunity has no relevance in this context. Thus, the district court's apparent belief that qualified immunity prevented an award of prospective injunctive relief in the form of an order compelling Pierre to perform some action in his official capacity is in error.

it is up to the plaintiff to establish that the same or a similar practice is currently in existence. In this case, there is no indication, through proof at trial or otherwise, that the same practices that prevailed in 1970 were still in effect in 1982, when Mangaroo was demoted. In the absence of such proof, there is simply no reason to conclude that Nelson should have surmised that *Ferguson* forbade his actions.

Second, we note that here, Mangaroo *retained* her position as a tenured professor, while in *Ferguson* the plaintiff was stripped of all tenure. Even if the university in 1969 required cause for a decision not to rehire an instructor, it is an open question whether the university in 1982 required cause before a university employee with tenure could be reassigned to positions within the university.

9. *See, e.g., Staheli v. University of Miss.,* 854 F.2d 121, 124 (5th Cir.1988); *Wells v. Doland,* 711 F.2d 670, 675 (5th Cir.1983); *Montgomery v. Boshears,* 698 F.2d 739, 742 (5th Cir.1983).

10. *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *see also Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–1356, 39 L.Ed.2d 662 (1974).

Having established that her due process rights were violated, Mangaroo is entitled to some form of injunctive relief. Although we are sympathetic to her request that she be reinstated to her position as dean, Mangaroo herself suggests that equitable relief in the form of a postdeprivation hearing might also be appropriate. Because the district court is in the best position to determine what relief is called for now, over six years after Mangaroo was demoted, we believe that the fashioning of an appropriate injunctive remedy is a task that is better left to the discretion of that court. We thus reverse the judgment insofar as it denies injunctive relief, and remand the case to the district court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

*ON PETITION FOR REHEARING*

PER CURIAM:

The plaintiff has filed a petition for rehearing solely to seek a clarification on the issue of attorneys' fees on appeal. We grant rehearing to explain that our determination that each party shall bear its own costs is without prejudice to plaintiff's application, on remand, for attorneys' fees for this appeal, as to which fees we intimate no opinion. In all other respects, rehearing is denied.