United States Court of Appeals,

Fifth Circuit.

Nos. 91–4608, 91–4834 to 91–4836.

INGALLS SHIPBUILDING, INC., Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, and Calvin C. Rouse, Respondents.

INGALLS SHIPBUILDING, INC., Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, and Annie L. Jackson–Tucker, Respondents.

INGALLS SHIPBUILDING, INC., Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, and Catherine L. Benn, Respondents.

INGALLS SHIPBUILDING, INC., Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, and Clydia Alford, Respondents.

Nov. 5, 1992.

Petitions for Review of a Final Order of the Benefits Review Board, United States Department of Labor.

Before POLITZ, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

Ingalls Shipbuilding, Inc. again seeks relief from statutory penalties for late payment of Longshore and Harbor Workers' Compensation Act[1] claims on the basis of a letter of excuse granted by the deputy commissioner[2] of the Department of Labor's Office of Workers' Compensation

---

[1]33 U.S.C. § 901 *et seq.*

[2]The deputy commissioner has been retitled district director.  20 C.F.R. § 702.105.

Programs. Bound by our prior decision holding this letter invalid, and declining to apply the principles of equitable estoppel against the government, we reject the petition for review and affirm the assessment of penalties by the Benefits Review Board.

Background

An unprecedented 2,000 hearing-loss claims under the LHWCA were filed against Ingalls during an eight-month period. The statute requires an employer to pay the first installment of compensation within 14 days after he "has knowledge of the injury," unless he files a notice of controversion or obtains a letter of excuse from the deputy commissioner within that time.[3] In particular, section 14(e) of the LHWCA provides:

> If any installment of compensation payable without an award is not paid within fourteen days after it becomes due...., there shall be added to such unpaid installment an amount equal to 10 per centum thereof ..., unless notice [of controversion] is filed ..., or unless such nonpayment is excused by the deputy commissioner after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.[4]

On May 11, 1987, Ingalls wrote the deputy commissioner requesting an excuse. The letter stated:

> This is to confirm our telephone conversations and your letters ... concerning the high number of hearing loss claims which have been filed with your office and your request that we hold all filings with your office until receipt of notice of claim from your office. We appreciate the administrative problems caused by the over 2,000 hearing loss claims which have been filed against Ingalls/Litton within the past 8 months and wish to do everything we can to cooperate with you.
>
> We are in agreement with your position that the time to respond to a claim and/or make any payment commences after service of that written claim from your office. However, we would appreciate written confirmation that owing to conditions over which Ingalls/Litton has no control, such response and/or payment cannot be made any earlier.
>
> We believe that the administrative burdens currently being visited upon your office can be solved if Ingalls is excused from filing notices, responses, and/or making payments of compensation until 28 days from the date of receipt of the notice of claim from your office, owing to these conditions over which we have no control.

The deputy commissioner replied on May 14, 1987:

> I have received and reviewed your letter of May 11, 1987 regarding the volume of hearing

---

[3] 33 U.S.C. § 914(b), (d), (e).

[4] 33 U.S.C. § 914(e).

loss claims filed against Ingalls Shipbuilding.  The situation is without precedent in my experience here, and I believe that the granting of the excuse you seek is warranted and within my authority under Section 14(e) of the Act.

Effective immediately, Ingalls is excused from filing notices, responses, controversions, and making payments in regard to hearing loss claims which have been filed, or will be filed, until 28 days following service on Ingalls of a claim from this office.  This excuse is in effect until further notice.

On April 18, 1988 the deputy commissioner terminated the excuse with a letter explaining:

Because of additional temporary staffing to handle just hearing loss claims, we are approaching currency in processing those claims, and the emergency situation present in 1987 no longer exists.  Ingalls, as of the date given above, will be required to comply with Section 14 of the Act upon receipt of any claim for hearing loss.

Adjudicating claims filed prior to those at issue herein, the Benefits Review Board found that the May 14 excusal was premised on administrative difficulties in the deputy commissioner's office and consequently was not authorized by section 14(e).[5]  Difficulties within the deputy commissioner's office, the Board reasoned, did not constitute conditions beyond Ingalls' control which prevented timely payment or controversion because the "employer's duty to pay or controvert the claim is not ... triggered by any action of the deputy commissioner" when the employer learns of the injury directly from the claimant, as Ingalls did with the claims *sub judice.*  In so holding, the Board specifically noted that "employer's counsel stated repeatedly at the administrative law judge hearing and at oral argument before the Board that it was the deputy commissioner who was experiencing problems, not [the] employer."[6]  On appeal we upheld the Board's assessment of section 14(e) penalties in *Ingalls Shipbuilding, Inc. v. Director, OWCP* and *Fairley.*[7]

The consolidated appellate petitions involve four hearing loss claims with pay-or-controvert deadlines occurring *after* the issuance of the May 14 excuse letter, unlike those adjudicated in *Fairley.*  Ingalls failed to pay or to controvert within 14 days of the claimants' notices of injury. Relying on *Fairley,* the administrative law judge found the May 14, 1987 excuse letter invalid and assessed statutory penalties;  the Board affirmed.  Ingalls timely petitioned for review of each of the

---

[5]*Fairley v. Ingalls Shipbuilding, Inc.,* 22 BRBS 184 (Ben.Rev.Bd.1989) (*en banc* ).

[6]*Id.*

[7]898 F.2d 1088 (5th Cir.1990).

four decisions and we granted its motion to consolidate.

Analysis

Contending that it sought the May 14, 1987 respite because of its own administrative overload, Ingalls asks us to find the deputy commissioner's authorization within the ambit of section 14(e) of the LHWCA. This we cannot do. Ingalls litigated the basis and validity of the letter in *Fairley,* the issue was resolved in that proceeding, and the resolution was necessary to the imposition and affirmance of statutory penalties. Accordingly, federal rules of collateral estoppel prevent our revisiting this issue,[8] as does our circuit rule that one panel may not ignore the decision of a prior panel absent intervening legislation or a superseding decision by the Supreme Court or this court *en banc.*[9]

Alternatively, Ingalls asks us to estop the government from asserting the invalidity of the excuse and assessing penalties. Distinguishing the instant claims from those adjudicated in *Fairley,* Ingalls argues that it has shown detrimental reliance on the deputy commissioner's excuse because the May 14 letter was issued before the 14–day deadline to pay the first installments or to controvert the claims. We decline to estop the government from enforcing the statute.

The private litigant who would estop the government bears a very heavy burden.[10] Although the Supreme Court has not held that equitable estoppel would *never* lie against the government, it recently pointedly reminded that it has "reversed every finding of estoppel that [it had] reviewed."[11] And as we earlier had explained:

> In the ... usual case, a party claims that the government is estopped from enforcing an otherwise applicable statute, regulation, or other law against it because it relied upon an

---

[8]*Terrell v. DeConna,* 877 F.2d 1267 (5th Cir.1989) (outlining federal rule of issue preclusion); *see Aerojet–General Corp. v. Askew,* 511 F.2d 710 (5th Cir.1975) (federal law determines whether a prior federal court judgment is *res judicata* ), *cert. denied sub nom. Metropolitan Dade County, Fla. v. Aerojet–General Corp.,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

[9]*See, e.g., Pruitt v. Levi Strauss & Co.,* 932 F.2d 458 (5th Cir.1991).

[10]*Mangaroo v. Nelson,* 864 F.2d 1202 (5th Cir.1989).

[11]*Office of Personnel Management v. Richmond,* 496 U.S. 414, 422, 110 S.Ct. 2465, 2470, 110 L.Ed.2d 387, 398 (1990).

erroneous statement or conduct by a government official indicating that the law was not applicable.... In such cases, we are reluctant to estop the government for the simple reason that, were the government barred from enforcing its laws and regulations every time one of its human agents erred, laws that were intended to be generally applicable would become riddled with exceptions.[12]

Accordingly, we have required that a party claiming equitable estoppel establish not only the traditional private law elements[13] but also "more than mere negligence, delay, inaction, or failure to follow an internal agency guidelines."[14]

This is not a case where estoppel lies. Ingalls contends that its reliance on the deputy commissioner's excuse was reasonable because the scope of section 14(e) had not been tested prior to *Fairley.* For this same reason, Ingalls cannot successfully contend that the deputy commissioner's decision to issue an excuse on the basis of the grounds cited in Ingalls' May 11, 1987 letter of request went beyond "mere negligence." Ingalls makes no allegation that the deputy commissioner knew that an excuse premised on these grounds was unauthorized or otherwise sought to mislead Ingalls into its present position. To the contrary, the deputy commissioner merely made an improvident assessment of the scope of his authority under section 14(e). This scenario evokes exactly the concerns that caution against estopping the government.

We recognize the harsh effects of the statutory scheme on employers who incur penalties if they act in reliance on a section 14(e) excuse that later is declared invalid. As the Court recently noted in commenting on the admittedly harsh effects of another LHWCA provision, however, "Congress has spoken with great clarity to the precise question raised by this case.... It is Congress

---

[12]*Mangaroo,* 864 F.2d at 1205 (citations omitted); *see also Mendrala v. Crown Mortgage Co.,* 955 F.2d 1132, 1140 (7th Cir.1992) ("As with other claims of estoppel against the government, the question is: "Who is in charge here, Congress and the President or subordinate officials?' ") (quoting *United States v. Medico Industries, Inc.,* 784 F.2d 840, 845 (7th Cir.1986)).

[13](1) that the party to be estopped was aware of the facts; (2) that the party to be estopped intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts; and (4) that the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury. *Mangaroo,* 864 F.2d at 1204.

[14]*Mangaroo,* 864 F.2d at 1204–05, *quoting Fano v. O'Neill,* 806 F.2d 1262, 1265 (5th Cir.1987).

that has authority to change the statute, not the courts."[15]

Finally, Ingalls urges us to consider its "First Report of Injury or Occupational Illness" the equivalent of a notice of controversion and thereby to find timely controversion in two of the four claims. Because Ingalls failed to present this argument in the administrative proceedings, we may not consider it here.[16]

Petition for Review is DENIED.

---

[15]*Estate of Cowart v. Nicklos Drilling Co.,* et al, ⸺ U.S. ⸺, ⸺, 112 S.Ct. 2589, 2598, 120 L.Ed.2d 379, 394 (1992).

[16]*State of Texas v. United States,* 866 F.2d 1546, 1561 (5th Cir.1989).