United States Court of Appeals,

Fifth Circuit.

No. 96-30692.

UNITED STATES of America, Plaintiff-Appellee,

v.

Christopher A. BLOOM, Defendant-Appellant.

May 12, 1997.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, WISDOM and KING, Circuit Judges.

WISDOM, Senior Circuit Judge:

Today we consider the applicability of the six-year statute of limitations contained in 28 U.S.C. § 2415(a) to cases involving default on scholarships awarded through the National Health Services Corps. We also examine the district court's grant of summary judgment for the government, and its consequent award of damages. For the reasons that follow, we affirm.

BACKGROUND

In 1979, Christopher A. Bloom was awarded a scholarship through the National Health Services Corps (NHSC) scholarship program to finance all four years of his medical school education.[1] Under the terms of the NHSC agreement signed by Bloom, he incurred a four-year service obligation in return for the four years of financial assistance. The program provided Bloom with an Applicant Information Bulletin which explained the service obligation under the NHSC

_____

[1] The NHSC program was created in 1976 to address a decline in the number of doctors available to serve rural areas. *United States v. Vanhorn* 20 F.3d 104, 107 (4th Cir.1994); *see* S.Rep. No. 92-1062, 92nd Cong., 2d Sess. (1972), U.S.Code Cong. & Admin.News at 4832. Through the program, scholarship recipients are provided with funds to cover tuition and educational expenses in return for an agreement to serve for a period of time equivalent to the greater of the number of years of support received or two years. 42 U.S.C. § 254*l* (f)(1)(B)(iv). All scholars in the program must sign written agreements obligating them to serve in an assigned Health Manpower Shortage Area (HMSA) as either a commissioned officer of the Public Health Service or in civilian service. 42 U.S.C. §§ 254e(a)(1), 254n, 254m. The terms of the agreement between the scholar and the Government are specified by statute. 42 U.S.C. § 254*l* (f). Congress has given the Secretary of Health and Human Services the authority both to designate HMSAs and to assign scholarship recipients to those areas. 42 U.S.C. §§ 254e, 254m.

scholarship program and the penalties for default.

After Bloom completed medical school, his service obligation was deferred for three years while he studied internal medicine.[2] Bloom received an additional one year suspension because of personal problems.

In 1986, Bloom chose to fulfill his service obligation as a salaried employee of the Desire-Florida Neighborhood Health Clinic (the Desire Clinic) under the Private Practice Option rather than as a corps member at a location determined by the NHSC.[3] In September, the NHSC conditionally approved Bloom's placement at the Desire Clinic. Bloom then tendered his resignation effective in November with Baptist Hospital Immediate Care Clinic. In December, final approval for the Desire Clinic placement was granted and Bloom was advised that his tentative starting date was July 1987. Bloom asserts that the NHSC made representations that he could begin immediately.

When Bloom reported to the Desire Clinic on November 1, 1986, he was told that the clinic had not been funded and, therefore, would not be able to hire him at that time. Bloom was unemployed until he obtained a position with the St. Bernard Clinic in January. In July, Bloom again reported to the Desire Clinic. The clinic was experiencing financial difficulties and could offer only part-time employment. As a result, Bloom resigned from the Desire Clinic on December 31, 1987.

From December 1987 through February 1989, Bloom communicated, through many telephone calls and correspondence, with the NHSC regional office in Dallas and the NHSC central office regarding the possibility of transferring to another approved site to complete his NHSC service obligation. After receiving a letter from Bloom dated December 28, 1987, Douglas Mahy, Chief of the Region VI NHSC branch, telephoned Bloom to discuss the transfer policy, a possible return to placement in New Orleans, and a one-year deferment.

---

[2]*See* 42 U.S.C. § 254m(b)(5)(A)(i).

[3]A scholarship recipient may serve as a civilian employee of the Government, as a commissioned officer in the Public Health Service, or serve in private practice, as Bloom did. 42 U.S.C. § 254m(b)(1)(A), (B); 42 U.S.C. § 254n. The Private Practice Option requires that the scholar enter a written agreement for a period of service in a full-time clinical practice in the HMSA selected by the Secretary. 42 U.S.C. § 254n(a). The obligation period and financial penalty is the same whether one is in private practice or a Corps member. 42 U.S.C. § 254n.

Bloom then requested a waiver of his service obligation. In response, Mahy wrote to Bloom on July 21, 1988, advising him to plan to return to service in 1989, following a one-year break in service, or to opt for a buy-out of his scholarship obligation. Mahy requested that Bloom respond in writing by August 15, 1988, regarding his decision either to request a transfer to another service site or to elect the buy-out option.

On August 30, 1988, after no response was received, Mahy again wrote to Bloom requesting that he respond by September 16, 1988. The letter further advised Bloom that if he did not respond by that date the NHSC would make a recommendation to place him in default. Bloom responded with a letter again requesting a waiver of his scholarship obligation. This was followed by a request for a waiver written by Bloom's attorney. The waiver was denied because Bloom presented no evidence that compliance with either the service or payment obligation was impossible or would cause extreme hardship. Bloom's attorney objected to the denial. The NHSC reiterated its denial and offered Bloom another chance to be transferred to a site in Louisiana. Mahy telephoned and wrote Bloom to inform him that a transfer from the Desire Clinic to the Bayou Comprehensive Medical Center in Lake Charles had been approved. Bloom, through his attorney, responded that he did not intend to accept the assignment.

Dr. John Dyer, Assistant Surgeon General and Regional Health Administrator for Region VI, wrote Bloom to inform him that he was being recommended for default. He was placed in default effective February 21, 1989.

The following year, Bloom sued the NHSC and other entities to prevent further collection on the debt. That suit was dismissed for failure to prosecute.

In September 1990, an IRS offset notice was sent to Bloom notifying him of the Public Health Service's intent to have the IRS offset his income tax refund against his NHSC scholarship debt. The letter incorrectly listed the amount past due as $27,200.70. Bloom telephoned Elvis Davis, Chief of the Accounts Receivable Section of the Health Resources and Services Administration, to verify the amount due. On that date, Davis responded in a letter with instructions for requesting a Repayment Agreement and the deadline for requesting such an agreement. On that same day, Bloom wrote a

letter confirming this conversation and requesting a "re-payment schedule." A written repayment agreement was never executed or prepared.

Bloom then made voluntary payments totaling $15,500 toward his NHSC scholarship debt. Bloom twice submitted checks designated "final payment," but these checks were not cashed. In addition, Bloom's 1990 federal income tax refund of $2,868.56 was offset and credited toward his scholarship debt. The Public Health Service calculated his total remaining debt to be $480,191.59.

The United States, for the Department of Health and Human Services, sued Bloom on May 11, 1995 to recover statutory damages due to his default on his NHSC scholarship obligation. The suit sought a principal amount of $152,579.47, plus interest of $345,410.79. On August 18, 1995, Bloom filed a motion to dismiss based upon the statute of limitations. The district court agreed with the United States that the complaint was timely filed and denied the motion to dismiss.

Bloom did not file an answer, but instead filed a counterclaim setting forth numerous defenses and seeking $1.5 million in damages on February 7, 1996.[4] On March 4, 1996, the Government filed a motion for summary judgment, dismissal of the counterclaim, and statutory damages.

On April 26, 1996, Bloom filed a motion to continue the trial on the grounds that he had recently substituted counsel and he had conducted no discovery. The district court denied the continuance, but extended the discovery cutoff and the pretrial conference to May 16, 1996.

On May 3, 1996, the district court granted the government's motion for summary judgment. Bloom timely appealed.[5]

## ANALYSIS

### A. Statute of Limitations

Bloom argues that the government's action against him was time barred under 28 U.S.C. § 2415(a). That section provides, in relevant part, that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or

---

[4]When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation. Fed.R.Civ.P. 8(c).

[5]Bloom does not appeal the dismissal of his counterclaim.

implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues...." The parties contest the timeliness of the complaint based upon their differing positions regarding when the right of action accrued. Before we reach that issue, however, we must consider whether the statute of limitations of § 2415(a) applies to NHSC agreements.[6] In *United States v. Westerband-Garcia,* the Ninth Circuit answered this question in the affirmative.[7] We agree.

Section 2415(a), by its language, applies to actions by the United States founded upon any contract. The question arises, then, whether the NHSC agreement is a contract. Upon review of the statute, we find that the agreement is a contract for the purpose of § 2415(a).

Throughout the statute, Congress describes the agreement between the scholarship recipient and the government as a "contract".[8] This language is strongly presumed to reflect the intent of Congress.[9] Further, the document signed by the recipient is labeled a "contract". Indeed, the NHSC agreement appears in every way to be in the nature of a contract. We find, therefore, no reason to hold other than that the NHSC agreement, by its own terms and by the terms of the statute that provides for its creation, is a contract.

We are mindful of our holding in *United States v. Melendez,* 944 F.2d 216 (5th Cir.1991) that common law contract principles are not entirely relevant in interpreting the terms of an NHSC agreement. Our holding in that case was based upon our observation that the conditions imposed upon an NHSC scholarship recipient derive not from a negotiated agreement between the parties, but rather from statutory directives. As such, we held that statutory intent is more relevant to interpretation of these conditions than are common law contract principles. Nonetheless, that the parties do not bargain to determine the terms of the agreement, but rather must take the terms as set forth in 42 U.S.C. § 254*l,* does not mean that the agreement is not a contract. Rather, the lack of

---

[6]The parties agreed that § 2415 applied to the NHSC agreement. This court, however, has never decided the issue directly.

[7]35 F.3d 418 (9th Cir.1994).

[8]*See* 42 U.S.C. § 254*l.*

[9]*I.N.S. v. Cardoza-Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (stating that the ordinary and obvious meaning of a statute is not lightly disturbed).

bargaining has the effect of rendering certain common law contract principles, such as impossibility, unconscionability, or economic duress, inapplicable in NHSC default cases.[10] The statute, however, does not of its own force subject the parties to conditions contained in § 254*l*. Not until the agreement is signed do the parties assume any responsibilities. Hence, our holding in *Melendez* does not affect our conclusion that the NHSC agreement is a contract.

Having determined that § 2415(a) applies to NHSC default cases, we must now decide when the right of action accrued in this case. Bloom asserts that the right of action accrued on the effective date of default or, at the latest, when he was placed in default. In either case, he contends, the action was barred. The government again urges us to follow *Westerband-Garcia,* where the Ninth Circuit held that the right of action accrues upon expiration of the statutory grace period when the recipient's debt becomes due in full.[11] Unlike the instant case, however, in *Westerband-Garcia* the debtor had not made any partial payments toward his debt. That particular fact in the present case obviates the need for our consideration of when the right of action accrues absent such payments.

The statute itself, in § 2415(a), states that "in the event of later partial payment or written acknowledgment of the debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment." The defendant made voluntary payments toward his debt on January 25, 1991 and on April 19, 1991. The right of action accrued again, under the statute, on each of these dates. Hence, the government had until April 19, 1997 to file its complaint. The complaint filed on May 11, 1995 was timely.

*B. Summary Judgment*

Bloom next argues that the district court erred in granting the government's motion for summary judgment. The district court's grant of summary judgment is reviewed *de novo,* applying the same standard used by the district court.[12] Summary judgment is appropriate "if the pleadings,

---

[10]*Melendez,* 944 F.2d at 219, *citing United States v. Hatcher,* 922 F.2d 1402, 1407-07 (9th Cir.1991).

[11]*Westerband-Garcia,* 35 F.3d at 422.

[12]*United States v. Arron,* 954 F.2d 249, 251 (5th Cir.1992).

depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."[13]  In viewing the summary judgment record, any factual inferences are drawn in favor of the nonmovant.[14]  To reverse summary judgment, the appellant "must show that a genuine fact issue exists that is material to the outcome of the dispute."[15]  "A fact is material if it might affect the outcome of the suit under the governing substantive law."[16]

Bloom maintains that genuine fact issues existed concerning whether the government should be estopped from enforcing the contract and whether the government compromised the debt by accord and satisfaction.  We address each of these in turn.[17]

*1. Estoppel*

Equitable estoppel is a doctrine that is rarely valid against the government.[18]  Courts have applied estoppel to the federal government in only the narrowest of circumstances.[19]  To establish estoppel against the government, a party must prove affirmative misconduct by the government and

---

[13]FED.R.CIV.P. 56(c).

[14]*Arron,* 945 F.2d at 251.

[15]*Id.*

[16]*Id.*

[17]Bloom also argues that discovery was inadequate for a summary judgment.  This argument is without merit.  The summary judgment rule does not require that any discovery take place before summary judgment can be granted.  *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir.1990).  If a party cannot adequately defend such motion, Fed.R.Civ.P. 56(f) provides for a continuance for further discovery.  *Id.*  Further, the party moving for continuance of discovery before ruling on motion for summary judgment must request extension prior to the court's ruling, place the court on notice that further discovery pertaining to summary judgment is being sought, and demonstrate how the requested discovery pertains to the pending motion.  *Exxon Corp. v. Crosby-Mississippi Resources, Ltd.,* 40 F.3d 1474, 1487 (5th Cir.1995).  Bloom made no such motion, nor does he argue that the denial of his April 25, 1996, motion to continue was erroneous.

[18]*Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60-63, 104 S.Ct. 2218, 2224-25, 81 L.Ed.2d 42 (1984);  *United States v. Marine Shale Processors,* 81 F.3d 1329, 1349 (5th Cir.1996).

[19]*Heckler,* 467 U.S. at 60, 104 S.Ct. at 2224;  *Moody v. United States,* 783 F.2d 1244, 1246 (5th Cir.1986).

also establish the four traditional elements of the doctrine. The four elements of estoppel are: (1) that the party to be estopped was aware of the facts, and (2) intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury.[20]

Bloom bases his estoppel argument, in part, on the NHSC's failure to conduct what he terms a "site analysis" of the Desire Clinic. Bloom produced no evidence, however, establishing that the NHSC had a duty to conduct a "site analysis". He cites no statute, regulation, or case placing such a duty upon the NHSC. No legal requirement exists compelling the NHSC to conduct a "site analysis" before assigning a scholar to a site or approving a scholar's match to a site. The term "site analysis" does not appear anywhere in the statute, regulations, or scholarship contract. The NHSC Private Practice Option agreement outlines the obligations of the NHSC and there is no reference to a "site analysis study."

As another basis for his estoppel claim, Bloom alleges that the NHSC failed to ascertain the financial viability of the Desire Clinic, that the NHSC misrepresented to Dr. Bloom that Desire Clinic was a match site at which he could discharge his contractual obligation to the government, and that these actions constitute recklessness and affirmative misconduct on the part of the NHSC.

As in his "site analysis" argument, however, Bloom produced no evidence of an obligation on the part of the NHSC to determine the financial viability of a match site. Under the terms of the NHSC agreement, the Secretary has no such obligation.

Finally and fatally, Bloom does not show any affirmative misconduct on the part of the government as required by the Supreme Court in *Heckler*. Bloom's assertions of inaction do not qualify as misconduct.[21] Considering the strict standards observed in the application of estoppel against the government, this failure by Bloom to even discuss any affirmative misconduct further eviscerates his estoppel argument. Accordingly, we find that summary judgment was proper as to Bloom's estoppel claim.

---

[20]*Moody,* 783 F.2d at 1246.

[21]*REW Enters., Inc. v. Premier Bank,* 49 F.3d 163, 169 (5th Cir.1995).

## 2. Accord and Satisfaction

Bloom maintains that his voluntary payments to the NHSC were for accord and satisfaction and that fact issues existed sufficient to preclude summary judgment. Under Louisiana law, an accord and satisfaction is a contract terminating a dispute between parties over obligations claimed due under a previous contract.[22] The three elements essential to the confection of a valid accord and satisfaction are: (1) a disputed claim, (2) the debtor's tendering of a sum less than that claimed by the creditor, and (3) the creditor's acceptance of the payment.[23] This court has further observed that mutual consent is "an abso lute requisite to the formation of a contract of accord and satisfaction."[24] It is clear from the evidence that while Bloom tendered two checks labeled "payment in full," they were not accepted by the Government. Bloom has not shown acceptance by the government and thus has not fulfilled all of the elements required to prove accord and satisfaction.

In addition, Congress requires the approval of the Attorney General to compromise a debt over $100,000.[25] Bloom has not suggested or produced even a shred of evidence that the agreement was approved by the Attorney General as required. As such, summary judgment for the United States was proper as to the defendant's claim that the government compromised the debt.

## C. Damages

Bloom argues that the district court's award of damages was erroneous. Thi s assertion, however, is based wholly upon Bloom's insistence that the debt was compromised by accord and satisfaction. Having determined that no accord and satisfaction was entered into by the parties in this case, Bloom's argument necessarily fails.

## CONCLUSION

We hold, in summary, that the six-year statute of limitations contained in 28 U.S.C. § 2415(a)

---

[22]*Fischbach and Moore, Inc. v. Cajun Electric Power Cooperative,* 799 F.2d 194, 197 (5th Cir.1986).

[23]*Id.* at 198.

[24]*Id.*

[25]31 U.S.C. § 3711(a)(2).

does apply to NHSC scholarship default cases. We conclude, however, that the government's complaint was timely filed. We further hold that the grant of summary judgment for the United States was proper and that the damages award was not erroneous.

**AFFIRMED.**