Frances G. WRIGHT, as guardian of the person and Estate of Patrick W. Cary, a minor and incompetent et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CV–74–92–HG.

United States District Court, D. Montana, Havre-Glasgow Division.

Jan. 24, 1977.

Tom H. Foulds, Foulds, Felker & Gelfand, P. S., Seattle, Wash., James E. Purcell, Henningson, Purcell & Genzberger, Butte, Mont., for plaintiffs.

Thomas A. Olson, U. S. Atty., Billings, Mont., for defendant.

## MEMORANDUM AND ORDER

BATTIN, District Judge.

Presently pending before the Court are the respective motions for summary judgment filed by the plaintiffs and the defendant. The matter has been fully briefed by counsel for both parties; no hearing having been requested, the matter is deemed to be submitted on the briefs. Summary judgment is granted in favor of the defendant United States against the plaintiffs. Summary judgment is denied on the motion filed by the plaintiffs against the defendant.

Summary judgment, as authorized by Rule 56 of the Federal Rules of Civil Procedure, is a method for disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved. On a motion for summary judgment, the Court cannot try issues of fact. It can only determine whether there are issues to be tried. In this case, there appears to be no genuine issue of material fact, and therefore it is a proper case for summary judgment.

The burden is on the moving party to establish that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Matters presented in connection with a motion for summary judgment must be construed most favorably to the party opposing the motion. In cases of cross motions for summary judgment, the same principle applies and the facts are construed most strongly against the movant.

### FACTS:

This case and the facts giving rise to it evolve from the tragic incident involving the near drowning of Patrick W. Cary. The facts as set forth below are essentially those set forth in the plaintiffs' pleadings.

During the years 1965 through 1968, the Farmers Home Administration, hereinafter referred to as "FMHA", an agency of the United States Department of Agriculture,

sponsored and financed the creation and construction of a recreational complex located between Saco and Malta, Phillips County, Montana. The development of this recreational complex was part of a nation-wide program for the implementation of which the FMHA promulgated methods and procedures for establishing rural recreation developments. 7 C.F.R. § 1823.1, *et seq.* Sleeping Buffalo Recreation Association was an organization of Phillips County citizens participating with the FMHA in the development of the Sleeping Buffalo recreation area. From 1965 to 1968, the period of creation and construction of the Sleeping Buffalo area, and from 1969 through September of 1971, the period of actual operation of the recreation complex, the Sleeping Buffalo Recreation Association worked closely with the FMHA.

On August 22, 1971, the plaintiff, Patrick W. Cary, paid a fee for admission to the swimming pool at the recreational complex. There were two lifeguards on duty at the time. Patrick Cary was swimming with a large number of minor children in the inside swimming pool at the Sleeping Buffalo complex. There was no lifeguard on station at the inside pool area. Each of the lifeguards on duty at the time of this incident thought the other was at the station at the inside pool. However, both lifeguards were among the crowd at the outside pool. The Sleeping Buffalo development is built at the location of some natural hot springs. There is high mineral content in the water at this area and as a result the water in the swimming pool was murky. The murky mineral water in the inside pool prevented visibility beyond the depth of a few feet. Furthermore, the inner perimeter pool lights were turned off and not operating at the time of this incident. Patrick Cary went under the surface of the water and disappeared in the inside pool. Approximately six to ten minutes elapsed before lifeguards were alerted and able to locate Patrick at the bottom of the pool. After extricating Patrick from the pool, sustained efforts by one of the lifeguards and subsequently a medical doctor resulted in the revival of Patrick Cary. However, because of the prolonged period without oxygen, Patrick Cary suffered massive and permanent brain damage.

In their complaint, the plaintiffs allege three counts involving different legal theories whereby they claim that the Government is liable to the plaintiffs. The three counts, simply stated, are as follows:

(1) Count One alleges the direct, active negligence on the part of FMHA in exercising operation control and management over the Sleeping Buffalo area and recreational complex;

(2) The second count alleges that the Sleeping Buffalo Recreational Area was no more than an empty corporate shell, whose directors, officers and employees and the corporation itself acted in a capacity as employees and agents of the FMHA;

(3) The third count alleges that the Government succeeded to all of the assets of the Sleeping Buffalo Recreation Association and likewise succeeded to the liabilities of the Sleeping Buffalo Recreation Association. One of the liabilities, which the plaintiffs claim the Government succeeded to, is the unliquidated claim of Patrick Cary.

The facts which predominate in this action are not those surrounding the actual incident wherein Patrick Cary nearly drowned. Rather, the facts establishing the relationship between the United States of America and the Sleeping Buffalo Recreation Association are the facts upon which summary judgment is granted. In March 1968, the United States of America provided land for the development of the Sleeping Buffalo Recreational Complex. Various pieces of land were transferred to the Sleeping Buffalo Association under Patent No. 25–68–0094. That patent required compliance with certain conditions, one of which was:

" . . . an approved plan of development and management, filed August 11, 1967, and January 22, 1968 . . . ."

Patent 25–68–0094, page 2, paragraph 4. In granting the patent, the United States retained a reversionary interest conditioned upon the Sleeping Buffalo Recreational As-

sociation's compliance with the developmental plans they had filed. When the land was granted to the Sleeping Buffalo Association, the facilities already extant on the site were acquired from the American Legion, Malta Post 57, by warranty deed. The land and buildings held by Post 57 had been acquired from the United States Government by Patent No. 1182716. This Sleeping Buffalo patent, the patent from the United States granting the land to Malta Post 57 of the American Legion, both restricted the use of the land to "recreational purposes only" and retained a twenty-five-year reversionary right to the United States Government which the Sleeping Buffalo Recreational Association took subject to, under the terms of the warranty deed acquired from the American Legion.

Before the lands involved in the Sleeping Buffalo complex were transferred, a project report on the area was prepared by the FMHA. The project report set forth an organizational plan, a financing plan, and construction and management plans for the recreational development. Numerous details were included in the report, including: a construction cost estimate; a schedule of membership fees and membership classification; financial arrangements; proposed rates for the facility on a daily basis, including greens fees, swimming charges, and archery charges; and the requirements for insurance, including the requirements for liability insurance. The project plan also set forth the personnel requirements, including persons to be hired such as the project manager, the project bookkeeper and secretary, the project desk clerk, two lifeguards to attend the pools, and the number of maids necessary to maintain the sleeping accommodations. The report also provided that the Association of local citizens organized to operate as a Board of Directors for the Association was to be organized under the appropriate Montana statutes and with the approval of the State Director, FMHA, and the office of the General Counsel. The report also contains construction specifications for the construction of the golf course, the clubhouse, the swimming pool, and the tennis courts. After the Sleeping Buffalo Recreation Association was established, the lands eventually involved in the complex were granted to the Association subject to the conditions contained in the deeds, the most notable aspect being the reversion of the land to the United States in the event of the breach of a condition in the development and maintenance and operation of the Sleeping Buffalo complex.

In August of 1973, James and Kathleen Cary filed a claim for damages on behalf of themselves with the Farmers Home Administration. On the same day, August 21, 1973, a claim on behalf of Patrick Cary was filed with the Farmers Home Administration. The claims were denied and this action was commenced within the six-month limitation from the date of the denial of the claims.

The defendant has responded to certain requests for admissions made by the plaintiffs. A summary of these manifests a certain relationship between the FMHA and the Sleeping Buffalo Recreation Association. The FMHA attended virtually all of the Board of Directors' meetings for the Sleeping Buffalo Recreation Association. The FMHA worked to develop an advertising campaign for the complex. The FMHA advised and participated in certain construction decisions such as the design of a filtering system and furthermore required FMHA approval of such systems before the actual work was done. The State Director of the FMHA was kept continually apprised of the status of the recreational complex and was concerned with such matters as the daily operational functions of the Association. The FMHA required the Sleeping Buffalo Recreational Association to maintain certain kinds of insurance and oversaw the payments of the insurance premiums.

Ultimately, the Sleeping Buffalo Recreational Association was not able to keep its commitments. When insurance policies were canceled because premiums had not been paid, the FMHA vouchered for all insurance *except* the liability insurance. The manager employed originally by the Sleeping Buffalo Recreation Association

was not satisfactory and the FMHA offered assistance in finding and training the competent manager. The FMHA was instrumental in the establishment of dues requirements and required an assignment of membership dues to the FMHA even though the dues were kept in an operational bank account rather than the supervised bank account. The FMHA was knowledgeable in the deficiencies of the complex, including the physical defects such as the defective pool lighting and inadequate filtering system. Eventually the FMHA took control of the Sleeping Buffalo Recreational Association and operated the complex for a one-year period.

Based upon these facts, the plaintiffs urge that no conclusion is possible other than that the United States Government was directly involved in the operation and control of the Sleeping Buffalo Recreation Association and the recreational complex. On this ground they urge that the three theories offered by the plaintiffs concerning liability have been established.

The Federal Tort Claims Act allows recovery against the United States Government in those cases, generally, where under like circumstances recovery could be had against a private individual. 28 U.S.C. § 2674. The Federal District Courts have exclusive jurisdiction of civil actions on claims against the United States for personal injury caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment. 28 U.S.C. § 1346(b). The general principles of agency, including *respondeat superior,* apply to the United States Government in tort claims actions when the person against whom the action is sought falls within the definition of "federal agency" or "employee of the government" set forth in 28 U.S.C. § 2671. That section provides:

"As used in this chapter and sections 1346(b) and 2401(b) of this title, the term 'Federal agency' includes the executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

" 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."

The plaintiff argues that the Sleeping Buffalo Recreation Association was a corporation primarily acting as an instrumentality or agency of the United States of America. In making this argument, the plaintiff relies heavily on the case of *Orleans v. United States of America,* 509 F.2d 197 (6th Cir. 1975). In that case, a minor sued the United States under the Federal Tort Claims Act to recover for personal injuries suffered in an automobile accident which occurred on an outing sponsored by a Community Action Council, formed under the Economic Opportunity Act. The District Court granted summary judgment to the United States on the ground that the Community Action Council was a contractor and not a federal agency. On appeal, the Sixth Circuit Court of Appeals reversed the District Court and held that where a Community Action Council was receiving funds solely from the federal government and operating within statutory and regulatory "guidelines" of the Office of Economic Opportunity, then the Community Action Council was deemed to be a federal agency when sued by a "client" of the agency who claimed injuries as the result of negligence on the part of the agency's employees. The *Orleans* case was appealed to the United States Supreme Court. June 1, 1976, the United States Supreme Court reversed the Sixth Circuit decision in *Orleans. United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

In the *United States v. Orleans,* the Community Action Council was a community action agency within the meaning of 42 U.S.C. § 2790(a). The Council was a non-

profit corporation, organized under the Ohio statutes. When the suit was brought, the Community Action Council received all its monetary resources from the Office of Economic Opportunity, the federal agency established to administer the Economic Opportunity Act. In the present action, the Sleeping Buffalo Recreation Association was a non-profit corporation, organized under the laws of Montana, and designed to meet the requirements of 7 U.S.C. § 1926(a)(1), to provide for the application or establishment of a recreational development serving farmers, ranchers, and other rural residents. The money received by the Sleeping Buffalo Recreation Association obtained primarily from the monetary resources of the FMHA. Furthermore, the FMHA received federal monies for implementing programs involving the development of recreational areas in rural communities.

▉ The Federal Tort Claims Act is a limited waiver of sovereign immunity. Under the Act, the federal government is liable to the same extent as a private party for torts committed by federal employees acting within the scope of their employment. The *Orleans* Court found that

"The Tort Claims Act was never intended, and has not been construed by this Court, to reach employees or agents of all federally funded programs that confer benefits on people. The language of 28 U.S.C. § 1346(b) is unambiguous, covering injury 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . .'[2] The Act defines Government employees to include officers and employees of 'any federal agency' but excludes 'any contractor with the United States.' 28 U.S.C. § 2671.[3]" *United States v. Orleans, supra*, 96 S.Ct. at 1975–76 (footnotes omitted).

Of critical importance in the *Orleans* decision was the independent contractor exception to the waiver of immunity under the Tort Claims Act. In resolving this, the Court found that the critical question in *Orleans* was not whether the community action agency received federal money and had to comply with federal standards and regulations, but whether its day-to-day operations are supervised by the federal government. See, *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973), and *Maryland v. United States*, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965).

▉ The Sleeping Buffalo Recreation Association in this case cannot be said to be an independent contractor. However, the principles of *Orleans*, especially those which are articulated by the Court with regard to congressional funding of projects for the betterment of certain kinds of communities, remain the same. The FMHA regulations and requirements, in addition to its advice in this case, were aimed at construing the governmental interest in financing the project—they were not aimed at converting every undertaking of the Recreation Association into an act of the federal government. As the Court said in *Orleans* :

"Federal funding reaches myriad areas of activity of local and state governments and activities in the private sector as well. It is inconceivable that Congress intended to have waiver of sovereign immunity follow congressional largesse and cover countless unidentifiable classes of 'beneficiaries.' The Federal Government in no sense controls 'the detailed physical performance' of all the programs and projects it finances by gifts, grants, contracts or loans." *United States v. Orleans, supra*, 96 S.Ct. at 1977.

▉ The underlying statute in this case, as was the case in the *Orleans* decision, emphasizes that the nonprofit corporation set up to establish a recreational development is a local, not a federal enterprise. Thus, the agents and employees of the Sleeping Buffalo Recreation Association, a nonprofit community corporation, are not employees of the federal government. Nor is the Sleeping Buffalo Recreation Association an agency of the federal government. 28 U.S.C. § 2671. Another factor deemed to be important in the *Orleans* decision was that the Economic Opportunity Act provid-

ed that a community action agency is to be administered by a community action board composed of *local* officials, representatives of the community, and members of business, labor and other groups in the community. In this case, a striking parallel exists in the requirement that the members of the local Board of Directors for the nonprofit organization seeking funds from the FMHA be comprised of persons who are either farmers or live in rural communities.

■ The federal government giving financial aid and advice in this case was seeking only to assure that federal funds were used for their appropriate purpose. As the Court stated in *Orleans,*

"To convert the local executors of a locally planned program or project which receives conditional federal funding into federal employees distorts well-established concerts of master and servant relationships and extends the meaning of the Federal Tort Claims Act beyond the intent of Congress." *United States v. Orleans, supra,* 96 S.Ct. at 1978.

The waiver of immunity is an affirmative act on the part of the Government. It does not arise by implication from a relationship that is basically a financial undertaking.

Prior to the decision rendered in the *Orleans* case, the Eighth Circuit Court of Appeals had occasion to consider the issue which was raised in *Orleans.* Its disposition of the question conflicted with the decision reached by the *Orleans* Circuit Court. In *Vincent v. United States of America,* 513 F.2d 1296 (8th Cir. 1975), a nonprofit corporation which operated a Head Start program involving federal monies, and which had hired a part-time driver with money from federal grants, was found not to be within a class of instrumentalities or agencies of the United States so as to bring the nonprofit corporation within the ambit of the Federal Tort Claims Act. The Court reasoned that there was insufficient federal control over the local corporation to cause it to be considered an agency or instrumentality of the Federal Government within the meaning of the Federal Tort Claims Act.

■ On this basis, I conclude that the Sleeping Buffalo Recreation Association is not an agency of the federal government within the meaning of the Federal Tort Claims Act. Nor is the Sleeping Buffalo Recreation Association the alter ego of the FMHA, which is an agency of the federal government. The acts of the employees of the Sleeping Buffalo Recreation Association cannot be attributed to the FMHA and therefore attributed for purposes of the Tort Claims Act to the United States. The Recreation Association was a local, nonprofit corporation that had received funds from the federal government to develop a recreational area. This nexus is not sufficient to make the United States liable for the acts of the employees of the Recreation Association. Finally, the retention of the reversionary interest in the land deeded to the Sleeping Buffalo Recreation Association by the Government is not sufficient either in conjunction with the loan of money or standing alone to establish the Government's liability in this case.

■ The second argument put forth by the plaintiffs in this action is that the United States is liable for the negligence involved here by virtue of the FMHA's negligence in the operation of the Sleeping Buffalo complex. This argument falls short of establishing the Government's liability. Despite the fact that the employees of the United States, employees of the FMHA, had knowledge of certain conditions regarding the physical condition of the Sleeping Buffalo complex, liability cannot be imputed to the Government for this reason. The intent of the Congress in establishing the statutes authorizing the development of recreational complexes in rural areas was not to establish liability on the part of the Government for knowledge of certain facts of which the Government agencies, through their employees, would become aware during the development and construction of the recreation areas.

Plaintiffs argue that the case of *Conner v. Great Western Savings and Loan Association,* 69 Cal.2d 850, 72 Cal.Rptr. 369, 447 P.2d 609 (1968), provides a basis upon which

the FMHA can become liable as a lender for torts committed by a borrower or for negligence in supervision on the part of the lending institution.

Though there may be some factual similarities to the case at hand, the *Conner* decision is an exception to the rule of tort liability by a lender, rather than the generally accepted rule. The cases cited in the plaintiffs' brief, supporting their contention of the liability on the part of the lender, are insufficient to say that the direction of the law in this area is unquestionably clear.

The final argument put forth by the plaintiffs in support of their motion for summary judgment is that the Government is liable in this instance by virtue of its succession to the assets of the Sleeping Buffalo Recreation Association and its concomitant assumption of liabilities incurred by the Sleeping Buffalo Recreation Association. Many cases hold that a successor corporation is liable for the debts of its predecessor corporation where there is an express agreement to assume debts or where such an agreement is implied. This rule holds true when there is an absorption or merger of corporations. In such instances, the general rule is that the remaining corporation assumes not only the assets of its predecessor but also its liabilities. In this case, the argument is made that liability for the negligence which occurred in this action was occasioned while the Sleeping Buffalo Recreation Association was still the corporation in charge of the recreational complex. Some few days after the occurrence of this incident, the FMHA took over the Sleeping Buffalo complex and continued to run it for nearly a year in much the same fashion as it had been run by the Sleeping Buffalo Recreation Association Board of Directors. Thus, the plaintiffs argue, an analogy to the corporate assumption of liabilities can be made in this case by the assumption of operations on the part of the FMHA with regard to the Sleeping Buffalo complex. The case of *Pittsmont Co. v. O'Rourke*, 49 Mont. 281, 141 P. 849 (1914), sets forth the principles of law applicable to creditors and successor corporations in this state. The

case is not applicable in this instance because there is no successor corporation. The FMHA is merely an instrument in the implementation of congressional plans to develop recreational complexes in rural areas. In its capacity as a supervisor and administrator in the development of the recreational complexes, the FMHA lacks the accoutrements of corporate status. Therefore, the principle of imputing corporate liabilities to successor corporations does not apply.

None of the theories put forth by the plaintiffs would establish a basis upon which summary judgment may be granted. The case of *United States v. Orleans, supra,* establishes principles upon which summary judgment can be granted for the Government. Therefore,

IT IS ORDERED that the plaintiffs' motion for summary judgment be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment be, and the same hereby is, granted.

IT IS THEREFORE ORDERED that this action be dismissed. The Clerk shall forthwith enter judgment denying the plaintiffs all relief.