Stanley **MENDRALA** and Isabelle J.
Mendrala, Plaintiffs–Appellants,

v.

**CROWN MORTGAGE COMPANY**, an Il-
linois corporation, and Federal Home
Loan Mortgage Corporation, a corpora-
tion of the United States, Defendants–
Appellees.

No. 91–1358.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1991.

Decided Feb. 3, 1992.

Philip S. Aimen (argued), Donald J.
Brooks, Chicago, Ill., for plaintiffs-appel-
lants.

Nancy K. Needles, Asst. U.S. Atty., Office of the U.S. Atty., Civ. Div., Appellate Section, David I. Herbst, Ronald A. Damashek (argued), Portes, Sharp, Herbst & Fox, Chicago, Ill., for defendants-appellees.

Before CUDAHY and EASTERBROOK, Circuit Judges, and MOODY, District Judge.*

CUDAHY, Circuit Judge.

This case asks us to decide whether the Federal Home Loan Mortgage Corporation (FHLMC) may be bound or estopped by the unauthorized actions of its loan servicer. It also presents the issue whether the FHLMC is a "federal agency" for purposes of the Federal Tort Claims Act. We affirm in part, reverse in part and remand.

## I.

In April 1984, the Mendralas borrowed $110,000 from Crown Mortgage Company to finance the purchase of an apartment building in Chicago. They executed a promissory note which was secured by a mortgage, both dated April 11, 1984. At the time of application and closing, the Mendralas were informed that the FHLMC would be involved and would have to approve the loan. At closing, they also executed an Estoppel Certificate which certified the validity and enforceability of the loan documents in order "to induce Federal Home Loan Mortgage Corporation ... to accept an assignment of [the] Note and Mortgage." The Mendralas maintain, however, that they signed the Estoppel Certificate in blank without having read it. Crown then endorsed the note to the order of the FHLMC and assigned the mortgage to the FHLMC. The Mendralas assert that they did not have knowledge of the contract by which Crown assigned the note and mortgage to the FHLMC. Under the contract between Crown and the FHLMC, Crown agreed to service the mortgage and collect mortgage payments for the FHLMC

in accordance with the requirements of the FHLMC's Sellers' and Servicers' Guide.

The parties do not dispute that the note assigned by Crown to the FHLMC contained a typewritten "lockout" provision prohibiting prepayment before April 11, 1989. The Mendralas allege that the lockout provision was not in the note when they signed it, but was added by Crown, which also allegedly forged the Mendralas' initials on the face of the note.

The Mendralas made monthly payments to Crown for four years through June 5, 1988. In June 1988 the Mendralas requested and received a pay-off statement from Crown. On July 1, 1988, the Mendralas prepaid the balance due on the note and mortgage by cashier's check from Prospect Federal Savings Bank to Crown. Upon learning of the attempted prepayment, the FHLMC advised Crown that the prepayment was in violation of the note's lockout provision and would not be accepted. Within a week of the prepayment, Crown informed the Mendralas that the prepayment was invalid and attempted to return the amount paid by the Mendralas. Prospect Bank then returned the check paid by Crown. The Mendralas stopped paying the monthly installments due under the note beginning July 1, 1988.

The Mendralas then filed suit against Crown and the FHLMC. Their Amended Complaint contains five counts: Count I, an action to quiet title, cancel the note and release the mortgage of record; Count II, a statutory action under Ill.Rev.Stat. ch. 95, ¶ 54 (1987), for willful failure and refusal to release a mortgage of record; Count III, claiming breach of contract for failure to cancel the note and mortgage as promised in Crown's pay-off statement; Count IV, alleging the tort of slander of title (Counts I–IV are against the FHLMC as assignee of the note and mortgage); and Count V (against both Crown and the FHLMC), alleging the tort of fraudulent alteration of the note. The FHLMC also filed a counterclaim for foreclosure. Finally, the Mendra-

* The Hon. James T. Moody, District Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

las filed a counterclaim and a cross-motion for declaratory judgment.

■ Count IV and Count V as to the FHLMC were dismissed on voluntary motion of the Mendralas and are not raised in this appeal. The district court dismissed Count II for lack of subject matter jurisdiction, finding it within the intentional tort exception to the Federal Tort Claims Act's general waiver of sovereign immunity. The court also granted summary judgment in favor of the FHLMC on Counts I and III and on the FHLMC's counterclaim for foreclosure on the ground that estoppel cannot be applied against a federal instrumentality. Finally, the district court dismissed the Mendralas' counterclaim and cross-motion for declaratory judgment. Pursuant to Fed.R.Civ.P. 54(b), the district court has made a determination that there is no just reason for delay in the entry of final judgment on all matters in dispute between the Mendralas and the FHLMC.[1]

1. Fed.R.Civ.P. 54(b) provides that a court may enter final judgment as to fewer than all of the parties in an action "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Initially, the district court made a Rule 54(b) determination only as to the FHLMC's counterclaim for foreclosure. On September 26, 1991, however, after oral argument in this case, the district court entered an order making the required Rule 54(b) determination as to all matters in dispute between the Mendralas and the FHLMC. This circuit permits certification under Rule 54(b) to be obtained after a notice of appeal has been filed. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. State of Wisconsin*, 760 F.2d 177, 180–81 (7th Cir.1985).

2. The Mendralas also came to believe that the FTCA is applicable. On March 6, 1990, they moved to dismiss their own Count II as to the FHLMC and requested leave to refile against the United States on the theory that the latter was the proper party defendant under the FTCA.

3. The district court did consider in a footnote the FHLMC's argument that it is not covered by the FTCA:

> If true, this would also defeat the plaintiffs' use of the FTCA because the United States has only consented to be sued for wrongful conduct committed by its employees, and this means employees only of federal agencies for purposes of the FTCA. However, we need not address this issue in light of our conclusions with respect to the FTCA's intentional tort

## II.

### A. Applicability of the Federal Tort Claims Act

■ The first issue we must resolve is whether the Federal Tort Claims Act applies to the FHLMC. The district court assumed that it does.[2] It found, however, that Count II falls within the exception for intentional torts from the FTCA's general waiver of sovereign immunity, 28 U.S.C. § 2680(h), and it therefore dismissed Count II for lack of subject matter jurisdiction.[3] If, however, the FTCA does not apply in the first place, then the FHLMC is *prima facie* suable under its enabling statute, and Count II should not have been dismissed for lack of subject matter jurisdiction.

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2671–2680, provides a limited waiver of the sovereign immunity of the United States for certain torts of federal agency employees. A "federal agency" un-

exception. *Mendrala v. Crown Mortgage Co.*, No. 88 C 7386, 1990 WL 129602, at *6 n. 1, 1990 U.S.Dist. Lexis 11250, at *5 n. 1 (N.D.Ill. Aug. 27, 1990).

In its disposition of this issue, the district court apparently considered two scenarios: (1) the FHLMC is the defendant and the FTCA applies; and (2) the United States is the defendant and the FTCA does *not* apply. Both of these scenarios require dismissal for lack of subject matter jurisdiction, the court reasoned, the first because of the FTCA's intentional tort exception, and the second because the United States cannot be sued for the conduct of an entity that is not a federal agency. But the court failed to consider another scenario: (3) the *FHLMC* is the defendant and the FTCA does *not* apply. (Indeed, it was apparently this scenario that was contemplated by the Mendralas when they originally filed suit.) In this scenario the FHLMC is presumptively just another entity that can be sued (the applicability of sovereign immunity or related doctrines being a separate issue), and there is, of course, no intentional tort exception. The district court may have failed to consider this third possibility because the plaintiffs had attempted to dismiss Count II and refile against the United States. But the underlying reason for their motion to dismiss as to the FHLMC was lack of subject matter jurisdiction. The court should have considered the premise of the motion to dismiss (namely, whether the FTCA applies) without using the requested relief (substitution of party defendants) against the plaintiffs.

der the Act includes "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." 28 U.S.C. § 2671. The FHLMC is a corporation of the United States, created and chartered by Congress to pursue its statutory mission of maintaining secondary mortgage markets. *See* S.Rep. No. 19, 101st Cong., 1st Sess. 38 (1989). As a hybrid entity—federally chartered but acting largely as a private corporation—the FHLMC does not fit neatly into any of the categories laid out by Congress in the Federal Tort Claims Act. Does the FHLMC fall within the set of "corporations primarily acting as instrumentalities or agencies of the United States"? On the one hand, the FHLMC is a corporation of the United States, it is designed to meet specific policy goals articulated by Congress and it is deemed a federal agency for certain purposes. On the other hand, the statute does not say "all federally chartered corporations," but rather, "corporations *primarily acting as* instrumentalities or agencies of the United States"; this language suggests that Congress contemplated a functional approach to determining which federal corporations are federal agencies under the FTCA. In the end, however, this "definition" does not take us very far, because it amounts to the nearly circular: Federal agencies include corporations that primarily act as federal agencies.[4] This circuit has held that the Federal Deposit Insurance Corporation—like the FHLMC a Janus-faced federal-private entity—qualifies as a federal agency under this provision of the FTCA. *Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co.*, 592 F.2d 364, 369 n. 5 (7th Cir.), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979). A Federal Reserve Bank, however, another hybrid corporation, is not a federal agency under the Act,

according to the Ninth Circuit. *Lewis v. United States*, 680 F.2d 1239 (9th Cir.1982).

Since the basic question is whether Congress provided that the FHLMC "primarily act[ ] as [an] instrumentalit[y] or agenc[y] of the United States," we turn first to the FHLMC's governing statute. The following provision initially appears promising:

> Notwithstanding section 1349 of Title 28 or any other provision of law, (1) the Corporation shall be deemed to be an agency included in sections 1345 and 1442 of such Title 28; (2) all civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States....

12 U.S.C. § 1452(f). Section 1345 of Title 28 provides for original jurisdiction in the federal district courts where an "agency" of the United States brings a civil suit; section 1442 allows officers of federal agencies to remove to federal court any suits filed against them in state courts. One might conclude that since Congress specifically provided for the FHLMC to be an "agency" for purposes of bringing suit and removal, but did *not* so provide for purposes of being a defendant (section 1346) or for purposes of the FTCA itself (section 2671), it therefore intended the FHLMC not to be a federal agency for the latter purposes. As we have observed, however, "[n]ot every silence is pregnant; *expressio unius est exclusio alterius* is therefore an uncertain guide to interpreting statutes." *Illinois Dep't of Public Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir. 1983). One might conclude, alternatively, that section 1452(f) makes the FHLMC a federal agency for all (or most) purposes. Indeed, why would Congress make the FHLMC an agency for purposes of filing and removal, but not for purposes of being a defendant or being a federal agency under the FTCA? The first answer to this question must be that, irrespective of any reason on the part of Congress, it appears that Congress has in fact made such a distinction: the provision refers only to sections 1345 and 1442 in "deeming" the

---

**4.** The definition is not strictly circular, of course, because it restricts the class to corporations that *primarily act as* federal agencies—as

opposed to, say, corporations that *look like* federal agencies or corporations that *occasionally* act as federal agencies.

FHLMC an agency. In addition, the legislative history of 12 U.S.C. § 1452(f) (though scant) suggests that this part of the provision is indeed concerned only with suing in and removing to federal court.[5] Finally, sections 1345 and 1442 simply provide for jurisdiction in federal court, and jurisdictional provisions may easily be viewed as significantly different from the FTCA's substantive provisions governing what counts as a federal agency.[6] Congress's obvious determination that suits involving the FHLMC should be in federal court is not surprising, given that such suits will always (at least tangentially) implicate a federal statute (the FHLMC's organic statute), and particularly given the defined federal mission for which Congress created the FHLMC. *See infra* section II.B. But it does not follow that the FHLMC is the United States under the Federal Tort Claims Act; the latter simply involves a different question—and one that is not such a clear-cut matter of classification.

■ Section 1452(f) ultimately does not tell us whether the FHLMC is a federal agency under the FTCA. No other provision of the FHLMC's statute can be construed as direct evidence of Congress's intent as to the issue. We therefore consider the FHLMC in light of the principles established by courts in deciding whether other entities are federal agencies for purposes of the FTCA. A review of the cases reveals that courts consider the following factors in making this determination: (1)

the federal government's ownership interest in the entity; (2) federal government control over the entity's activities; (3) the entity's structure; (4) government involvement in the entity's finances; and (5) the entity's function or mission.

We begin with the courts' treatment of two entities that seem most akin to the FHLMC: the Federal Deposit Insurance Corporation and the Federal Reserve Bank. Our circuit has held that the FDIC "is unquestionably a 'federal agency' within the meaning of § 2679(a)" of the FTCA. *Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co.*, 592 F.2d 364, 369 n. 5 (7th Cir.), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979). In that case the court did not explain its conclusion, but merely cited the Ninth Circuit's decision in *Safeway Portland Employees' Federal Credit Union v. Federal Deposit Ins. Corp.*, 506 F.2d 1213, 1215 (9th Cir.1974), which in turn simply cited two district court cases for the proposition that the FDIC is a federal agency within the coverage of the FTCA. One of those cases, *Freeling v. Federal Deposit Ins. Corp.*, 221 F.Supp. 955, 956 (W.D.Okla.1962), *aff'd per curiam*, 326 F.2d 971 (10th Cir.1963), explains:

> The statute [creating the FDIC, 12 U.S.C. §§ 1811 *et seq.*,] provides in part: that the President will appoint two of the three members of the Board of Directors; certain investments of the corporation must first have the approval of the Sec-

---

**5.** In the Senate Report, the only specific reference to what is now 12 U.S.C. § 1452(f) states in full: "[The section] gives the Corporation clear authority to bring suit in Federal court and to remove to such court any judicial proceedings in which it is involved, and prohibits the issuance of any attachment or execution against the Corporation or its property before final judgment." S.Rep. No. 761, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 3488, 3514.

**6.** Of course this explanation has not yet answered the question why Congress distinguished between section 1345 (captioned "United States as plaintiff") and section 1346 (captioned "United States as defendant"), deeming the FHLMC an "agency" under the former but not the latter. Both are jurisdictional provisions, as is section 1442. The simple answer is that section 1346

does not mention the word "agency," but applies to suits "against the United States"; sections 1345 and 1442, in contrast, refer as well to agencies of the United States. Second, ensuring federal jurisdiction for the FHLMC under section 1346 may have been rendered unnecessary by section 1442's removal provision. The third (and most interesting) point is that section 1346 contains the jurisdictional component of the Federal Tort Claims Act (section 1346(b)). Congress's failure to mention section 1346 alongside section 1345 in the FHLMC statute would therefore seem to imply one of two things: that Congress did not intend to address the applicability of the FTCA to the FHLMC at all; or (if we are going to give any weight to the *expressio unius* maxim) that Congress decided *not* to make the FTCA apply to the FHLMC.

retary of the Treasury; and the corporation is required to report annually to Congress as to its financial condition. *Freeling,* 221 F.Supp. at 956. The district court also relied on the FDIC's status as a " 'mixed-ownership government corporation' whose financial transactions are required to be audited annually by the General Accounting Office." *Id.* (quoting *Pearl v. United States,* 230 F.2d 243, 245 (10th Cir.1956)).

On the other hand, in *Lewis v. United States,* 680 F.2d 1239 (9th Cir.1982), the Ninth Circuit held that a Federal Reserve Bank is not a federal agency under the FTCA, emphasizing the "federal government control" factor. The court noted that although each Federal Reserve Bank is a corporation created by Congress and is heavily regulated, it is completely privately owned by commercial banks in its region. In addition, the stockholding commercial banks elect six of the Bank's nine directors, who supervise and control the Bank's daily operations. *Id.* at 1241.

The court in *Lewis* may have overstated the matter when it wrote that "the critical factor is the existence of federal government control over the 'detailed physical performance' and 'day to day operation' of [the] entity," citing *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976), and *Logue v. United States,* 412 U.S. 521, 528, 529, 93 S.Ct. 2215, 2220, 37 L.Ed.2d 121 (1973). *Lewis,* 680 F.2d at 1240. In *Logue* the Supreme Court held that a county jail holding a federal prisoner was not a federal agency under the FTCA, relying on the lack of federal government control over the jail's daily operation. However, there the Court was specifically construing the exclusionary clause of section 2671: an agency "does not include any contractor with the United States." Lack of control over daily operations was considered dispositive in *Logue* for the specific reason that it is the common-law definition of an independent contractor. 412 U.S. at 527, 93 S.Ct. at 2219. The contractor exception of section 2671 is not involved in the present case, nor was it involved in *Lewis.*

While the government control factor may not be dispositive where the contractor exception is not at issue, we nonetheless think that it may be an important factor in determining whether an entity is a federal agency under section 2671. It is worth noting that even before *Logue,* federal government control over an entity's activities was a factor expressly relied on when courts considered hybrid corporations like the FHLMC under section 2671. *See, e.g., Pearl v. United States,* 230 F.2d 243, 245 (10th Cir.1956) ("The control of Congress over this corporation [the Civil Air Patrol] is only such as is common to virtually all private corporations granted federal charters...."); *Freeling,* 221 F.Supp. at 956 ("The control of Congress and the President over the corporation ... lead me to the conclusion that the [FDIC] is a federal agency as defined and referred to in the Federal Tort Claims Act."). Moreover, cases after *Logue* have also found the federal government control factor helpful under the FTCA, even in non-contractor situations. Indeed, in *Orleans,* the Supreme Court itself arguably generalized the usefulness of the government control factor in the process of holding that a community action agency created pursuant to the Economic Opportunity Act, 42 U.S.C. §§ 2781 *et seq.,* was not a "federal agency" for purposes of the FTCA. The Court traced the government control factor to *Logue* and *Maryland ex rel. Levin v. United States,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205, *vacated and remanded on other grounds,* 382 U.S. 159, 86 S.Ct. 305, 15 L.Ed.2d 227 (1965). But in *Maryland ex rel. Levin,* and apparently in *Orleans* (though the opinion is not clear in this regard), the Court did not actually find the contractor exception applicable; rather, the Court relied on the lack of federal control to find the entities to be local and state entities, respectively, and thus not federal agencies. In any event, other cases after *Logue* (and in addition to *Lewis*) have relied on the government control factor in construing the FTCA, even where no contractor is involved. *See, e.g., Vincent v. United States,* 513 F.2d 1296, 1297 (8th Cir.1975), *cert. denied,* 426 U.S. 919, 96

S.Ct. 2623, 49 L.Ed.2d 372 (1976); *Wright v. United States*, 428 F.Supp. 782, 787–88 (D.Mont.1977), *aff'd*, 599 F.2d 304 (9th Cir. 1979).

We think that under the principles established in the cases the FHLMC is not a federal agency for purposes of the FTCA, and that the FHLMC is distinguishable from the FDIC. First, the federal government has no ownership interest in the FHLMC, unlike the FDIC. This factor was found relevant in *Lewis*, 680 F.2d at 1241, *Pearl*, 230 F.2d at 245, and *Freeling*, 221 F.Supp. at 956. In addition, the general statutory definitions applicable to Title 28 suggest that this factor is important: "agency" is defined as including "any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense." 28 U.S.C. § 451.

The second and third factors—federal government control and the structure of the entity—also support this conclusion. Like the Federal Reserve Bank considered in *Lewis*—and unlike the FDIC[7]—the FHLMC's Board of Directors is controlled by private shareholders: thirteen of its eighteen members are elected by the voting common shareholders and only five are appointed by the President. 12 U.S.C. § 1452(a)(2)(A). The Board has the authority "[w]ithin the limitation of law and regulation ... [to] determine the general poli-

cies that govern the operations of the Corporation." 12 U.S.C. § 1452(a)(1). The Board is also given general power to prescribe investments for the Corporation and to supervise the exercise of the Corporation's extensive powers.[8] While the FHLMC is subject to regulation by the Secretary of Housing and Urban Development, it is regulated significantly less than the FDIC, and the regulation imposed on it generally does not extend to its daily operations.[9] Moreover, extensive federal regulation does not convert an entity into a "federal agency" under the FTCA. *Orleans*, 425 U.S. at 817–18, 96 S.Ct. at 1977–78; *Lewis*, 680 F.2d at 1241.

Fourth, the FHLMC receives no appropriations from Congress. *See Lewis*, 680 F.2d at 1242; *cf. Goddard v. District of Columbia Redevelopment Land Agency*, 287 F.2d 343, 345 (D.C.Cir.) (relying in part on congressional appropriations in holding land redevelopment agency a federal agency under FTCA), *cert. denied*, 366 U.S. 910, 81 S.Ct. 1085, 6 L.Ed.2d 235 (1961). Evidence that the FTCA does not contemplate coverage of an entity like the FHLMC can be found in the Act's provision that an award of $2,500 or less "shall be paid by the head of the Federal agency concerned out of appropriations available to that agency." 28 U.S.C. § 2672.

The fifth factor is the entity's mission or function. *See Lewis*, 680 F.2d at 1241;

---

7. The FDIC's Board of Directors consists of the Comptroller of the Currency, the Director of the Office of Thrift Supervision and three members appointed by the President, by and with the advice and consent of the Senate. 12 U.S.C. § 1812(a)(1).

8. For example, the Corporation has the power to:

> make and perform contracts, agreements, and commitments; ... prescribe and impose fees and charges for services by the Corporation; ... settle, adjust, and compromise ... any claim ...; acquire, take, hold, and own, and to deal with and dispose of any property; and ... determine its necessary expenditures and the manner in which the same shall be incurred, allowed, and paid, and appoint, employ, and fix and provide for the compensation and benefits of officers, employees, attorneys, and agents, all without regard to any other law except as may be provided by the

> Corporation or by laws hereafter enacted by the Congress expressly in limitation of this sentence.

12 U.S.C. § 1452(c).

9. The legislative history of the 1989 amendments to the FHLMC's enabling statute is instructive:

> It is the intent of the [Senate Banking, Housing, and Urban Affairs] Committee that the regulatory powers of the Secretary [of Housing and Urban Development] will not extend to the FHLMC's internal affairs, such as personnel, salary, and other usual corporate matters, except where the exercise of such powers is necessary to protect the financial interests of the Federal Government or as otherwise necessary to assure that the purposes of the Federal Home Loan Mortgage Corporation Act are carried out.

S.Rep. No. 19, 101st Cong., 1st Sess. 38 (1989).

*Goddard,* 287 F.2d at 345. As we discuss below, *see infra* section II.B, the FHLMC certainly furthers an important federal mission, and does act as a federal agency or instrumentality in this sense. This factor, however, is not dispositive when weighed against the other four factors. All federally chartered corporations further some congressional mission, but the fact that an entity is federally chartered does not necessarily make it a federal agency under the Act. *See Lewis,* 680 F.2d at 1241–42; *Pearl,* 230 F.2d at 245.

Because the FHLMC is privately owned, is structured to function independently of the federal government to a great extent, and receives no appropriations from Congress, we conclude that it is not a federal agency for purposes of the Federal Tort Claims Act.

### B. *Estoppel and the* Merrill *Doctrine*

 The district court held that the FHLMC could not be bound by the unauthorized conduct of Crown because estoppel generally cannot be applied against the government, relying on *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). On this ground it resolved the remaining issues in favor of the FHLMC, granting summary judgment on Counts I and III and on the FHLMC's counterclaim for foreclosure (to which the Mendralas' only defense was the alleged misconduct of Crown). The court dismissed the Mendralas' counterclaim and denied the Mendralas' cross-motion for declaratory judgment. We review issues decided on summary judgment *de novo,* resolving all reasonable inferences in favor of the non-moving party. *New Burnham Prairie Homes, Inc. v. Burnham,* 910 F.2d 1474, 1477 (7th Cir.1990).[10]

There is no dispute that the note assigned by Crown to the FHLMC contained a typewritten "lockout" provision prohibiting prepayment. In addition, the FHLMC's Sellers' and Servicers' Guide clearly prohibits acceptance of prepayment except in accordance with the terms of the note. There is no question, then, that Crown's initial acceptance of the Mendralas' prepayment was unauthorized. The Mendralas argue, however, that the FHLMC is bound by Crown's issuance of the pay-off statement, initial acceptance of the Mendralas' attempted prepayment.and alleged fraudulent alteration of the note. They contend that the protections of sovereign immunity and the *Merrill* doctrine do not apply to the FHLMC in this case.

Initially we note that much of the Mendralas' argument on appeal assumes that the district court found the FHLMC protected by the general doctrine of sovereign immunity. In fact, the district court based its decision on the narrower principle that estoppel does not lie against the government. *See* 1990 WL 129602, at *4, 1990 U.S.Dist. LEXIS 11250, at *10 (Aug. 27, 1990); 1991 WL 3322, at *3, 4, 5, 6 n. 1, 1991 U.S.Dist. LEXIS 40, at *8–9, 11–12 (Jan. 3, 1991); 1991 WL 18176, at *1, 1991 U.S.Dist. LEXIS 1550, at *3 (Feb. 8, 1991). While it is true that this principle once rested largely on considerations of sovereign immunity, it is distinct from that doctrine and is supported by its own independent rationales. *See generally Portmann v. United States,* 674 F.2d 1155, 1158–60 (7th Cir.1982). The district court's conclusion that estoppel should not be applied in this case did not require a determination that the FHLMC is clothed with sovereign immunity as a general matter.

Our conclusion that the FHLMC is not a "federal agency" for purposes of the FTCA does not preclude a determination that it is a federal instrumentality for other purposes, including purposes of estoppel and the *Merrill* doctrine. As the courts have made clear, the test for finding an entity to be a federal agency under the FTCA is a relatively narrow one. Thus after finding

---

10. Two claims were not disposed of on summary judgment. Count II was dismissed for lack of subject matter jurisdiction. *See supra* section II.A. The Mendralas' counterclaim was dismissed on the FHLMC's motion under Fed. R.Civ.P. 12(b)(6). The district court correctly found the Mendralas' counterclaim to be simply a rewording of their argument in Count III, which the district court had previously rejected in granting summary judgment for the FHLMC. Dismissal of the counterclaim was therefore proper.

that a Federal Reserve Bank is not a federal agency under the FTCA, the court in *Lewis* noted that the Bank was nonetheless a federal instrumentality for purposes of immunity from state taxation and that Bank employees were "public officials" under the federal bribery statute.[11] Similarly, the principle that estoppel does not lie against the government rests on the broader rationales of separation of powers and public policy considerations. *See Portmann*, 674 F.2d at 1159–60. In fact, courts have specifically held the FHLMC to qualify for the protection of the no-estoppel rule. *McCauley v. Thygerson*, 732 F.2d 978, 982 (D.C.Cir.1984); *FHLMC v. Freedlander, Inc.*, No. 87–265–A (E.D.Va. June 12, 1987) (unpublished order). Unlike the factors applied under the FTCA, classification as a government entity in this context turns on whether estoppel would thwart congressional intent:

> When a court applies broad notions of promissory estoppel to bind a congressionally created entity to the unauthorized words or deeds of an official of that entity, the court may thwart the congressional intent embodied in the prescribed nature of, and limitations on, that entity's authority.... A decision to treat FHLMC as if it were a private employer for purposes of promissory estoppel would undermine this congressional intent [that FHLMC be considered a federal entity for employment relations purposes].

*McCauley*, 732 F.2d at 982; *see also United States v. Medico Industries, Inc.*, 784 F.2d 840, 845 (7th Cir.1986) ("As with other claims of estoppel against the government, the question is: 'Who is in charge here, Congress and the President or subordinate officials?' "). The court in *McCauley* held

that estoppel could not be applied against the FHLMC to make it liable for breach of an employment contract on the basis of certain unauthorized representations by FHLMC officials.

In *Merrill* the Supreme Court stated that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." 332 U.S. at 384–85, 68 S.Ct. at 3–4. Agents of the Federal Crop Insurance Corporation in that case had erroneously informed plaintiffs that their wheat crop was insurable. The Court held that the FCIC was a federal instrumentality, and as such, it could not be bound by its agents' misrepresentations beyond the scope of their authority, nor estopped from enforcing its crop insurance requirements. The Supreme Court has consistently upheld the general principle that federal instrumentalities cannot be estopped by persons acting beyond their authority, though it has declined to declare explicitly that the no-estoppel rule is without exception. *See, e.g., Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984) ("[T]hose who deal with the Government ... may not rely on the conduct of Government agents contrary to law."); *Schweiker v. Hansen*, 450 U.S. 785, 788–91, 101 S.Ct. 1468, 1470–72, 67 L.Ed.2d 685 (1981).

■ We think that the FHLMC is a federal instrumentality for estoppel purposes, and that it is protected by the *Merrill* doctrine in this case. The FHLMC has a public statutory mission: to maintain the secondary mortgage market and assist in meeting low- and moderate-income housing

---

**11.** The Ninth Circuit in *Lewis* distinguished among the different tests used for these purposes:

> The test for determining status as a public official turns on whether there is "substantial federal involvement" in the defendant's activities.... In contrast, under the FTCA, federal liability is narrowly based on traditional agency principles and does not necessarily lie when the tortfeasor simply works for an enti-

ty, like the Reserve Banks, which perform important activities for the government.... The test for determining whether an entity is a federal instrumentality for purposes of protection from state or local action or taxation, however, is very broad: whether the entity performs an important governmental function.

680 F.2d at 1242.

goals.[12] Holding the FHLMC responsible for the unauthorized actions of an entity such as Crown would thwart its congressional purpose.

Indeed, to the extent that this case differs from *Merrill, McCauley* and numerous others in the same line, it presents a *stronger* case for refusing to apply estoppel against the government, for the unauthorized conduct here was committed not by an employee of the federal instrumentality, but by a separate entity with which the FHLMC had contracted. Further, under the FHLMC's Sellers' and Servicers' Guide (pursuant to which Crown serviced the mortgage), Crown was an "independent contractor" and "not [FHLMC's] agent or assignee." Record, Vol. 1, Doc. 77, Ex. 2. Given the degree of attenuation here between the unauthorized actor and the government, the FHLMC should be *less* securely bound by Crown's conduct. Since the Mendralas have not shown that *the FHLMC* misrepresented anything to them, their case for applying estoppel against the FHLMC simply fails to get off the ground.

The Mendralas attempt to use this attenuation to their advantage. They argue that this case is distinguishable from *Merrill* because here they were not actually dealing with the FHLMC and were not on notice that the government was involved. This argument fails for several reasons. First, the Mendralas admit that when they applied for the loan from Crown they were told that the FHLMC would be assigned the loan and had to approve it. Additionally, at the closing they signed an Estoppel Certificate "to induce the Federal Home Loan Mortgage Corporation to accept an assignment of [the] Note and Mortgage." The Mendralas thus evidently had notice that they were dealing with some entity known as the FHLMC. Even if the Mendralas were unaware of the FHLMC's governmental status, this sort of "innocent ignorance" would not allow them to hold the government responsible for Crown's alleged unauthorized actions. *Merrill,* 332 U.S. at 385, 68 S.Ct. at 3.

The Mendralas correctly point out that this circuit and other courts have allowed estoppel to be applied against the government in certain circumstances. These exceptional cases have not established crystal-clear standards as to when government entities may be estopped; to the extent that they have established standards, those standards simply do not warrant estoppel against the FHLMC in this case. For example, courts have stated in several cases that "affirmative misconduct" on the part of the government would justify an exception to the no-estoppel rule. *E.g., Portmann,* 674 F.2d at 1167; *TRW, Inc. v. Federal Trade Comm'n,* 647 F.2d 942, 951 (9th Cir.1981); *see also INS v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973) (finding no "affirmative misconduct" but leaving open question whether such finding would permit estoppel against government). Affirmative misconduct has been defined as "something more than mere negligence." *TRW,* 647 F.2d at 951. Similarly, this circuit has allowed estoppel in situations in which "the Government specifically encouraged a mistake of which it then took advantage." *Strauch v. United States,* 637 F.2d 477, 482 (7th Cir.1980).

There was no such affirmative misconduct on the part of the FHLMC in the present case. Under the clear terms of the note, the FHLMC's Sellers' and Servicers' Guide and the applicable regulations, Crown simply had no authority to issue the pay-off statement to the Mendralas when it

---

**12.** The Federal Home Loan Mortgage Corporation Act, as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, provides as its Statement of Purpose:

It is the purpose of the Federal Home Loan Mortgage Corporation—

(1) to provide stability in the secondary market for home mortgages;

(2) to respond appropriately to the private capital market; and

(3) to provide ongoing assistance to the secondary market for home mortgages (including mortgages securing housing for low- and moderate-income families involving a reasonable economic return to the Corporation) by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for home mortgage financing.

Pub.L. No. 91–351, § 301, as amended, Pub.L. No. 101–73, Title VII, § 731(a), 103 Stat. 429 (Aug. 9, 1989).

did and to accept prepayment (and of course Crown had no authority to fraudulently alter the note). But the Mendralas fail to show how the *FHLMC* affirmatively encouraged any of Crown's mistakes or misconduct. The most they can say is that the FHLMC failed to take some action that might have prevented Crown's unauthorized conduct. But this would establish nothing beyond ordinary negligence—and certainly not "affirmative misconduct." Further, even establishing negligence appears difficult on this record, given the clear prohibition of prepayment in the note and Guide, and the FHLMC's prompt notification of Crown as to the invalidity of the Mendralas' prepayment.

The Mendralas also refer to *Azar v. United States Postal Service*, 777 F.2d 1265 (7th Cir.1985), and *Portmann*, 674 F.2d at 1155, in which this circuit allowed estoppel on the basis of misrepresentations by Postal Service employees regarding insurance coverage for its Express Mail Service. In each case the court narrowly confined its holding to the specific facts, relying in part on the Postal Service's direct competition in a private consumer market as simply another nongovernmental competitor. While the FHLMC may also compete in private markets, this case does not come close to any circumstances justifying an exception to the no-estoppel rule, if only because, in contrast to *Azar* and *Portmann*, the Mendralas allege no misrepresentation by an employee of the FHLMC.[13]

## C. *Additional Objections*

■ The Mendralas' other objections to the district court's judgment are without merit. First, Crown's assignment of the

note and mortgage to the FHLMC was valid. Even assuming, as the Mendralas assert, that the note was not actually transferred until over four months after the transfer of the mortgage, these transfers were part of a single transaction and were properly effected pursuant to the purchase contract between Crown and the FHLMC. The cases cited by the Mendralas, involving transfers of mortgages without the accompanying debt, are inapposite.

The Mendralas' assertion of ratification apparently was not made before the district court, and is therefore waived. Further, the undisputed evidence simply fails to support a claim of ratification on the part of the FHLMC. Far from ratifying or retaining the benefits of the unauthorized transaction, the undisputed evidence shows that the FHLMC immediately rejected the attempted prepayment and instructed Crown to return it.

Finally, the Mendralas list numerous "material issues of fact and mixed law and fact" that were improperly resolved by the district court on summary judgment. Most of the items listed are actually questions of law that we have resolved; those that are not are wholly irrelevant to the merits of the claims and defenses against the FHLMC. For example, the one clear issue of fact cited by the Mendralas—whether the note was fraudulently altered by Crown—has no bearing on claims against the FHLMC, given our conclusion that such unauthorized conduct does not bind the FHLMC under the *Merrill* doctrine.[14]

## III.

Because we have concluded that the FHLMC is not a federal agency for pur-

**13.** The FHLMC also argues that it is not subject to state law penalties, such as that requested in Count II. Because we have concluded that the FHLMC is not bound by the unauthorized conduct of Crown, and because Count II rests on the FHLMC's being so bound, we do not reach this issue.

**14.** The Mendralas also argue that the district court erred in denying their "motion to reconsider" under Fed.R.Civ.P. 59(e) as untimely. With regard to the orders entered April 20, August 27 and September 25, 1990, it appears that the motion to reconsider was properly denied as untimely under Rule 59(e)'s strict ten-

day limitation period. *See Marane, Inc. v. McDonald's Corp.*, 755 F.2d 106, 111 (7th Cir.1985). But the order of the district court signed January 3, 1991 was not entered on the docket until January 7, so the Mendralas' January 17 motion to reconsider was timely as to that order, and also as to the district court's January 15 judgment of foreclosure. Any error on this issue, however, was harmless. First, the Mendralas attempted to withdraw their Rule 59(e) motion on February 8, 1991, the same day the district court ruled on the motion but three days before its order was entered on the docket. Second, as the district court noted, the Mendralas had made the arguments contained in their motion

poses of the Federal Tort Claims Act, we must reverse the district court's dismissal of Count II, which was based on lack of subject matter jurisdiction (via the intentional tort exception to the FTCA). The district court, having dismissed Count II, found the FHLMC's motion for summary judgment on Count II moot. On remand, summary judgment on Count II will be appropriate, since the basis for the district court's grant of summary judgment on Counts I and III applies with equal force to Count II.

For the foregoing reasons, the district court's dismissal of Count II is REVERSED and the case is REMANDED for further proceedings consistent with this opinion; the judgment of the district court in all other respects is AFFIRMED.

to reconsider several times before, so the court had already had the opportunity to reconsider each of its prior rulings. *See* 1991 WL 18176, at

*2, 1991 U.S.Dist. LEXIS 1550, at *4 (Feb. 8, 1991).